UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| PEARSON EDUCATION, INC., ELSEVIER, INC., CENGAGE LEARNING, INC., JOHN WILEY & SONS, INC., AND MCGRAW-HILL GLOBAL EDUCATION HOLDINGS, LLC,<br><br>  Plaintiffs,<br><br>  v.<br><br>HOTFILE CORP. and ANTON TITOV,<br><br>  Defendants. | Case No. _____<br><br><br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiffs Pearson Education, Inc., Elsevier, Inc., Cengage Learning, Inc., John Wiley & Sons, Inc., and McGraw-Hill Global Education Holdings, LLC (collectively, the "Plaintiffs" or "Publishers"), by and through their undersigned counsel, on personal knowledge as to their own acts and on information and belief as to the acts of others, hereby allege as follows:

### NATURE OF THE ACTION

1. Plaintiffs are five of the largest textbook publishing companies in the United States. They are venerable American institutions, some having been established over 100 years ago. Each year, they publish thousands of titles, most or all of which have been illegally downloaded and then distributed through the operation of the website and service located at www.hotfile.com ("Hotfile" or the "Hotfile website"). Plaintiffs depend for their livelihood on the legitimate sale of their works. Hotfile's actions have caused enormous damage to their business.

2. Plaintiffs specialize in educational works such as textbooks and associated learning materials. Their titles include a diverse catalog of works, including such college textbooks as *Biology* by Neil Campbell, *Principles of Economics* by Greg Mankiw, *Calculus* by James Stewart, *Physics for Scientists and Engineers* by Raymond Serway, *Gray's Anatomy*, *Netter's Atlas of Human Anatomy*, and many other bestselling academic and professional treatises.

3. These titles are typically published in traditional "hard copy" format as well as digital e-books. They often include supplemental materials located on CDs and DVDs, and/or password-protected online platforms that contain more information for additional study, audiovisual files, sample PowerPoint presentations for teachers, study questions and other information.

4. Many of these textbooks and the associated materials are particularly expensive to create and manufacture because they undergo rigorous editorial work, include thousands of pages and contain hundreds of photographs, drawings and other visual elements beyond text. When these works are distributed illegally through Hotfile, the damage to the Publishers is profound.

5. Plaintiffs own or control federal copyrights in their works and they rely on the exclusive rights granted to them by the federal Copyright Act to recoup their investment in these works.

6. Defendants designed, create, and maintained a business called Hotfile that provided online file storage services to its users. Defendants designed Hotfile so that users could upload digital content to Hotfile servers and easily enable other users to anonymously download that content. Defendants placed no restriction on the nature of the content that could be uploaded

or downloaded.  Predictably, the vast majority of the content on Hotfile were unauthorized copies of copyrighted works, many owned by Plaintiffs.  Indeed, Defendants encouraged the use of their service for copyright infringement.  Defendants also profited from the prevalence of copyrighted works on the site, using them as a draw to sell premium access to the site.

7.	The scope of the copyright infringements facilitated by Hotfile is immense.  A large percentage of the many titles published by Plaintiffs in their vast library of works could be found on Hotfile and freely downloaded.  All of the works listed in Plaintiffs' Exhibit A were located on Hotfile prior to February 8, 2011.  Because Defendants placed no limit on the number of times a file could be downloaded, each of these titles may have been infringed hundreds or perhaps thousands of times, costing Plaintiffs millions of dollars in revenue.

8.	Defendants Hotfile and Anton Titov ("Titov") have already been adjudicated by this Court to be liable for copyright infringement.  In *Disney Enterprises, Inc.,* et al. *v. Hotfile Corp.*, et al., No. 1:11-cv-20427-CIV-KMW (S.D. Fla. Sept. 20, 2013), Judge Williams found Hotfile vicariously liable for copyright infringement.  Specifically, the Court found that it was "undeniable that [Hotfile] financially benefited" from the distribution of copyrighted works on its service.  Slip op. at 81.  The Court also found that "Hotfile failed to properly exercise its control in light of the number of users who were blatantly infringing . . . ."  *Id*. at 84.  Accordingly, this Court granted summary judgment against Hotfile and Titov on this count.

9.	With regard to Titov, the Court found that he wrote the programming code for Hotfile's interface, was a significant investor in the company, and was one of a handful of senior executives who ran the daily operations of the business.  The Court therefore held Titov liable for vicarious copyright infringement.  *Id*. at 90.

10.	The findings of liability against both Defendants are controlling here.

## PARTIES

11. Plaintiff Pearson Education, Inc. ("Pearson") is a Delaware corporation, with its principal place of business at One Lake Street, Upper Saddle River, New Jersey, 07458.

12. Plaintiff Elsevier, Inc. ("Elsevier") is a Delaware corporation with a principal place of business at 360 Park Avenue South, New York, New York 10010.

13. Plaintiff Cengage Learning Inc., formerly Thomson Learning, Inc., ("Cengage") is a Delaware corporation, with its principal place of business at 200 First Stamford Place, 4th Floor, Stamford, Connecticut, 06902.

14. Plaintiff John Wiley & Sons, Inc. ("Wiley") is a New York corporation with its principal place of business at 111 River Street, Hoboken, New Jersey, 07030.

15. Plaintiff McGraw-Hill Global Education Holdings, LLC ("McGraw-Hill") is a limited liability company organized under the laws of the State of Delaware, with its principal place of business at 2 Penn Plaza, New York, New York, 10121.

16. Plaintiffs are in the business of publishing textbooks and providing educational services in the United States and around the world. Plaintiffs are some of the largest and most successful textbook publishers in the world. Their books are some of the most successful titles in their fields. Examples of their works include those listed on Exhibit A hereto.

17. Plaintiffs own or control the copyright in each of the works listed on Exhibit A. Plaintiffs have the exclusive right to reproduce and distribute these works.

18. Defendant Hotfile Corp. is a Panamanian corporation that operated the Hotfile website and service.

19. Defendant Titov is a foreign national residing in Florida. He designed the Hotfile software, participated in the design of its business model, was one of only a handful of principals responsible for the daily operation of the service and profited from that business.

## JURISDICTION AND VENUE

20. This is a civil action seeking injunctive relief and damages for copyright infringement under the United States Copyright Act, 17 U.S.C. § 101 *et seq*. The Court therefore has original subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 (federal question) and 1338(a) (copyright).

21. The Court has personal jurisdiction over Defendant Hotfile Corp. because it committed the tortious acts at issue in the state of Florida, acting in concert with Defendant Titov, a Florida resident. It is also liable for the infringing actions of its users, which include the uploading and downloading of Plaintiff's copyrighted works in Florida. Hotfile also utilized Lemuria Communications, a Florida corporation created by Defendant Titov to provide Internet hosting services to Hotfile. This relationship was essential to the operation of Defendant's business and is alone sufficient to convey jurisdiction over Hotfile.

22. The Court has personal jurisdiction over Defendant Titov because he is a resident of Florida and conducted the business of Hotfile in Florida.

23. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), (c) and 28 U.S.C. § 1400(a).

## THE HOTFILE SYSTEM

24. Hotfile advertised itself as a "one click file hosting service" that permitted users to upload any digital files to the Hotfile servers for offsite storage and downloading. After uploading a file, the user was provided with a file address where the item could be found and

which typically contained the file name. Users could retrieve their files by typing the file address in an Internet browser or using a hyperlink. But the file was not reserved exclusively to the original uploader. To the contrary, anyone with a computer and Internet connection could access any file on Hotfile.

25. Athough Hotfile itself did not have a search feature built into its system, Hotfile had relationships with "affiliate sites" that indexed or aggregated the files on the service and organized them into searchable categories. Therefore, anyone who wanted to find a popular book such as *Windows for Dummies* on Hotfile would simply have to type that title and Hotfile into an Internet search engine such as Google. Among the top search results would certainly be some of the Hotfile affiliate sites. If a user clicked on one of those links from the Google page, he would be taken to the affiliate site, which would typically supply a list of links to all the copies of that book on Hotfile. The user could then click on one of those links to obtain a copy of the book.

26. In addition to making its files freely available to anyone on the Internet, Hotfile permitted its files to be downloaded an unlimited number of times by an unlimited number of people. In other words, anyone who wanted a copy of *Windows for Dummies* could get one, no matter how many different people had previously downloaded it.

27. Although anyone with an Internet connection could download a file from the service, Hotfile also sold Premium subscriptions, which granted users faster download speeds, unlimited numbers of downloads and longer storage times for files they uploaded. Premium subscriptions were available for nine dollars per month. These subscriptions were Hotfile's only source of revenue.

28. In order to drive traffic to its site, Hotfile compensated users for posting popular files. The more frequently a file was downloaded, the greater the reward. Hotfile also compensated downloads of larger files more richly than smaller files. As a result, Hotfile designed its system around very large, very popular digital content, which is the hallmark of copyrighted movies and books.

29. Hotfile did not encourage the uploading of small, unpopular files which is more typical of a system designed for personal storage of non-copyrighted material such as documents and personal photographs. Hotfile also deleted any file that had not been downloaded for 90 days, making the service completely unsuitable for personal storage.

30. Similarly, Hotfile paid the affiliate sites commissions on all the Premium subscriptions they sold. In this context, popular copyrighted content acted as a draw that brought in users to the Hotfile ecosystem and ultimately drove demand for Premium subscriptions.

31. According to the Court, "123 million files available on Hotfile's system have been downloaded 2.9 billion times . . . and have resulted in the registration of 5.3 million users. This has worked a significant financial benefit to Hotfile and its founders." *Disney*, slip op. at 5-6 (internal quotations and citation omitted).

32. Hotfile was aware that the vast majority of the files on its service were copyrighted. It received millions of takedown notices under the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 1201 *et seq.*, received correspondence from users and affiliates identifying copyrighted works and recognized that users were migrating to Hotfile for copyrighted works after competitor RapidShare was sued.

33. However, Hotfile did nothing at least through early 2011 to remove copyrighted files from its system. In particular, Hotfile failed to ban with any consistency repeat infringers

who accounted for a large percentage of the infringing files on the system. Despite receiving millions of DMCA notices, Hotfile did not track whether any of the uploads came from the same user. In fact, by early 2011, nearly 25,000 users had accumulated more than three DMCA notices and many had received 100 or more. This group of uploaders was responsible for posting 50 million files, which amounts to 44 percent of the files on Hotfile. *Disney*, slip op. at 19-20. This Court found as a matter of law that Hotfile did not implement a repeat infringer policy as required by the DMCA to qualify for a safe harbor. *Id*. at 51.

34. Hotfile also physically stored the infringing files on its servers, kept track of each file and could identify by IP address the uploading and downloading user of each file. Hotfile therefore had the ability to block access to and remove files and to block and remove users from the Hotfile system.

35. Defendant Titov designed Hotfile's software and participated in creating Hotfile. He is a senior executive who concurred with the adoption of all of Hotfile's business practices including its failure to take adequate steps to protect against infringement of Plaintiffs' copyrighted works. Titov also created Lemuria Communications to provide Internet hosting services to Hotfile. Lemuria stored all the infringing content at issue in this case.

36. Titov also shared in the profits generated by Hotfile. He holds a substantial financial stake in the company and along with Hotfile has benefited from the copyright infringement alleged herein.

37. This Court has already found Titov liable for copyright infringement based on his involvement with Hotfile. *Id*. at 90.

## **CLAIM FOR RELIEF**

## **VICARIOUS INFRINGMENT OF COPYRIGHT**

38. Plaintiffs repeat and reallege each and every one of the foregoing allegations as if set forth at length herein.

39. Plaintiffs own or control the federal copyright in each work listed on Exhibit A hereto.

40. Hotfile users have directly infringed each work listed on Exhibit A by reproducing and distributing those works through the Hotfile system without Plaintiffs' authorization. These acts constitute infringement under the Copyright Act, 17 U.S.C. § 106.

41. Defendants had the right and ability to control the infringing activity of Hotfile's users and to prevent that activity through various means.

42. Defendants derived a financial benefit from the infringement of Plaintiff's copyrights by using them as a draw to sell Premium subscriptions.

43. Defendants are therefore jointly and severally liable for secondary copyright infringement.

44. Defendants' acts were intentional and knowing, constituting willful copyright infringement under the Copyright Act, 17 U.S.C. § 504.

45. As a result of Defendants' infringing conduct, Plaintiffs are entitled to recover their actual damages as well as Defendants' profits pursuant to 17 U.S.C. § 504(b).

46. Alternatively, Plaintiffs are entitled to statutory damages up to a maximum of $150,000 per work infringed, pursuant to 17 U.S.C. § 514(c).

47. Plaintiffs are also entitled to attorneys' fees and costs pursuant to 17 U.S.C. § 505.

48. Unless enjoined, Defendants' conduct will continue to cause Plaintiffs irreparable injury for which they have no adequate remedy at law.

WHEREFORE, Plaintiffs pray for judgment against all Defendants as follows:

A. For a permanent injunction enjoining Defendants and all persons acting in concert with them, from infringing Plaintiffs' copyrighted works;

B. For an award of actual damages caused by Defendants' conduct and Defendants' profits; or in the alternative at Plaintiffs' election, an award of statutory damages;

C. For prejudgment interest according to applicable law;

D. For an award of Plaintiffs' attorneys' fees and costs in this action; and

E. For such other relief as the Court may deem just and proper.

Dated: January 17, 2014

By: s/Karen L. Stetson
Karen L. Stetson

GRAY-ROBINSON, P.A.
Karen L. Stetson (FL Bar No. 742937)
1221 Brickell Avenue, Suite 1600
Miami, FL 33131
Tel: 305-416-6880
Fax: 305-416-6887
karen.stetson@gray-robinson.com

OPPENHEIM + ZEBRAK, LLP
Matthew J. Oppenheim (*pro hac vice* to be filed)
Kerry M. Mustico (*pro hac vice* to be filed)
4400 Jenifer Street, NW, Suite 250
Washington, DC 20015
Tel: 202-621-9027
matt@oandzlaw.com
kerry@oandzlaw.com

*Attorneys for Plaintiffs*