**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

| |
|---|
| PEARSON EDUCATION, INC., ELSEVIER, INC., CENGAGE LEARNING, INC., JOHN WILEY & SONS, INC., and MCGRAW-HILL GLOBAL EDUCATION HOLDINGS, LLC, <br><br>     Plaintiffs, <br><br> v. <br><br> HOTFILE CORP. and ANTON TITOV, <br><br>     Defendants. |

**DEFENDANT ANTON TITOV'S MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

Plaintiffs in this action – four Delaware incorporated entities and one New York corporation, none of which have a principal place of business in Florida – bring the present action against Defendant Anton Titov (a Russian citizen who resides in Bulgaria) and Defendant Hotfile Corp. (a Panamanian corporation).  As the Court will see, however, these foreign Plaintiffs have attempted to pull foreign defendant Mr. Titov into a Court that lacks personal jurisdiction over him.

Contrary to the allegations in Plaintiffs' Complaint, Mr. Titov is <u>not</u> a resident of Florida; does <u>not</u> have a substantial personal connection to Florida; and has <u>not</u> conducted any personal business in Florida.  Indeed, there is <u>no evidence</u> that any alleged acts of infringement occurred in Florida; and Plaintiffs cannot (and do not) claim that the brunt of their alleged injuries were felt in Florida.  Because there is no basis for personal jurisdiction over Mr. Titov in Florida, the

1

present case against him must be dismissed under Federal Rule of Civil Procedure 12(b)(2).  In further support, Mr. Titov states as follows.

**BACKGROUND AND FACTS**

The Plaintiffs are various textbook publishers incorporated outside of Florida, with principle places of business outside of Florida.  Complaint, ¶¶ 11-16.  The Plaintiffs have filed this action, alleging that certain of their copyrighted works were made available on the website Hotfile.com (the "Hotfile Website"), which was previously operated by Defendant Hotfile Corp, a Panamanian corporation ("Hotfile").  *Id.*, ¶¶ 1, 18.  The Hotfile Website was permanently shut down in December of 2013.  *See* Declaration of Anton Titov in Support of Motion to Dismiss for Lack of Personal Jurisdiction ["Titov Decl."], ¶ 3, filed concurrently herewith.  Even when the website was operational, Mr. Titov did not own or operate the Hotfile Website – Hotfile did.  *Id.*, ¶ 4.

The Plaintiffs premise their lawsuit on a previous finding by this Court that Hotfile was vicariously liable for certain instances of copyright infringement engaged in by the users of the Hotfile Website.  *Id.*, ¶ 8.  *See Disney Enterprises, Inc. v. Hotfile Corp.*, No. 1:11-cv-20427-CIV-KMW, Docket No. 534, 2013 WL 6336286 (S.D. Fla. Sept. 20, 2013) ["*Disney Order*"].  In that holding, Judge Williams found that Hotfile was vicariously liable only for infringing acts on the Hotfile Website through the filing of the complaint in that action on February 8, 2011, after which time Hotfile changed its business practices to cure any perceived defects and to come into full compliance with the Digital Millennium Copyright Act safe harbors, which would have protected it from liability (and which did after February 8, 2011).  *Disney Order* at 51.  Judge Williams explicitly indicated that her holding was based only on activities prior to the filing of the complaint.  *Id.*  Accordingly, because the statute of limitations on copyright infringement is

2

three years (17 U.S.C. § 507(b)) and because the Complaint in this action was filed on January 17, 2014, the finding of liability in *Disney* is only applicable in so far as there was any actual infringement of Plaintiffs' works in the three weeks between January 17, 2011 and February 8, 2011.

The *Disney* plaintiffs also alleged that Mr. Titov was jointly liable for Hotfile's vicarious infringement because he was, Plaintiffs there alleged, "the central figure in Hotfile's infringing business model and activities." *See Disney Enterprises, Inc. v. Hotfile Corp.*, No. 1:11-cv-20427-CIV-KMW, Docket No. 1 (S.D. Fla. February 8, 2011) ["*Disney Complaint*"]. *See also* Complaint, ¶¶ 9, 19. As part of Mr. Titov's Motion for Summary Judgment in *Disney*, Mr. Titov argued that he was not subject to the jurisdiction of this Court. Although Judge Williams found that Mr. Titov is a Russian citizen who resides in Bulgaria (and <u>not</u> a Florida resident as alleged by both the Plaintiffs in *Disney* and in the instant litigation), the Court declined to rule on Mr. Titov's jurisdictional argument, holding that his counsel in that action had waived the argument by failing to raise it in his first pleading with the Court. *Disney* at 90-91. Although Mr. Titov was deemed to have waived his personal jurisdiction defense in the *Disney* case, he has properly raised the argument here and no such waiver exists. Accordingly, the *Disney* decision is irrelevant to the question of whether Mr. Titov can be subject to personal jurisdiction in this matter, which he cannot.

In the instant litigation, Plaintiffs have alleged that this Court has personal jurisdiction over Mr. Titov "because he is a resident of Florida and conducted the business of Hotfile in Florida." Complaint, ¶ 22. Plaintiffs also allege that Mr. Titov created a Florida corporation, Lemuria Communications, which provided Internet hosting services to Hotfile. Complaint, ¶ 21.

The first of these allegations, that Mr. Titov is a resident of Florida, is demonstrably false and clearly rebutted in the *Disney* case relied upon by Plaintiffs.  *Disney Order* at 90 (Mr. Titov is "a Russian citizen who resides in Bulgaria").  Mr. Titov is a Russian citizen who has resided in Bulgaria for the last two decades.  Titov Decl., ¶ 5.  His wife, son, mother and brother all reside in Bulgaria, where Mr. Titov owns a home and a car and pays taxes.  *Id.*, ¶ 6.

Although Plaintiffs do not even allege as much, Mr. Titov does not conduct personal business in Florida: he does not own property in Florida, does not pay taxes in Florida, has no bank account in Florida, and has no agent for the service of process in Florida.  Titov Decl., ¶ 7.  Mr. Titov's only business connection to Florida is his infrequent and passing contacts in connection with his work for non-party Lemuria.  Titov Decl., ¶ 8.  Florida's corporate shield doctrine exempts such activities undertaken by Mr. Titov as a corporate officer of Lemuria (or Hotfile) from consideration as part of the Court's jurisdictional analysis.

## ARGUMENT

## I.   Legal Standard

"A court must dismiss an action against a defendant over which it has no personal jurisdiction."  *H.E.R.O., Inc. v. Self*, 2012 U.S. Dist. LEXIS 69044, *4 (S.D. Fla. May 17, 2012) (quoting *Verizon Trademark Servs., LLC v. Producers, Inc.*, 810 F. Supp. 2d 1321, 1323-24 (M.D. Fla. 2011)).  "To withstand a motion to dismiss, the plaintiff must plead sufficient facts to establish a prima facie case of jurisdiction over the non-resident defendant's person."  *Id.* at *4 (citing *Virgin Health Corp. v. Virgin Enters. Ltd.*, 393 F. App'x 623, 625 (11th Cir. 2010)).

If the plaintiff meets its pleading burden the defendant can challenge the plaintiff's allegations through affidavits or other competent evidence.  *Id.* at *4.  To survive a motion to dismiss, "the plaintiff must substantiate the jurisdictional allegations in the complaint by

affidavits, testimony, or other evidence of its own.  The plaintiff must do more than merely reiterate the factual allegations in the complaint." *Id.* (internal quotation marks and citations omitted).

In determining whether it has jurisdiction over a foreign defendant, the Court employs a two-part analysis.  First, the Court "must determine whether the Florida long-arm statute provides a basis for personal jurisdiction." *Sculptchair, Inc. v. Centuary Arts*, 94 F. 3d 623, 626 (11th Cir. 1996).  If so, then the Court must also determine "whether sufficient minimum contacts exist between the defendants and the forum sate so as to satisfy 'traditional notions of fair play and substantial justice' under the Due Process Clause of the Fourteenth Amendment." *Id.* (citing *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 256 (11th Cir. 1996)).  The Plaintiffs cannot meet either prong of this analysis and, as such, the Complaint against Mr. Titov must be dismissed for lack of personal jurisdiction.

## II.     Mr. Titov is Not Subject to Jurisdiction Under Florida's Long Arm Statute

Under Florida's long arm statute, jurisdiction can be either general or specific.  *H.E.R.O., Inc.*, at *7 (citations omitted).  General jurisdiction – which is codified at Florida Statute § 48.193(2) – requires a demanding threshold showing that the Defendant was "engaged in substantial and not isolated activity within the state," such that the Defendant is shown to have "continuous and systematic general business contact with Florida." *Id.* at *9 (numerous citations omitted).  Specific jurisdiction under Florida Statute § 48.193(1)(a), provides for jurisdiction where a person, personally or though an agent, engages in one of an enumerated list of activities, *if* the plaintiffs' cause of action arises from such acts.  Neither general nor specific jurisdiction apply to Mr. Titov.

A.     Mr. Titov is Not Subject to General Jurisdiction

In order to exercise general jurisdiction over Mr. Titov, Mr. Titov must have maintained "'continuous and systematic general business contacts' with the forum, so that [he] can properly be considered to be 'present' in the forum."[1] *Am. Overseas Marine Corp. v. Patterson*, 632 So. 2d 1124, 1127 (Fla. 1st DCA 1994); *Baker v. Carnival Corp.*, 2006 WL3360418, at *2 (S.D. Fla. Nov. 20, 2006) ("General jurisdiction does not require a connection between a defendant's activities and the cause of action. . . .  Accordingly, the due process requirements are more stringent, and substantial, persistent, continuous, and systematic contacts with the forum state must be present. . . .  The defendant's contacts with the forum must be so extensive to be tantamount to a defendant being constructively present in the state to such a degree that it would be fundamentally fair to require it to answer in the forum state's courts in any litigation arising out of any transaction or occurrence taking place anywhere in the world." (internal quotation marks, citations, and alterations omitted)).

As indicated above, Plaintiffs' only allegations as to Mr. Titov with respect to personal jurisdiction are: (1) that Mr. Titov resides in Florida and (2) that Mr. Titov "conducted the business of Hotfile" in Florida.  Complaint, ¶ 22.[2]  The *Disney Opinion* upon which Plaintiffs rely provides no further support regarding Mr. Titov's connections with Florida.  Because it is simply untrue that Mr. Titov is a resident of Florida (a fact disproven by Mr. Titov's sworn

---

[1] As compared to specific jurisdiction discussed below, "[t]he requirement of continuous and systematic general business contacts establishes a much higher threshold than the minimum contacts required to assert specific jurisdiction, for the facts required to assert this general jurisdiction must be extensive and pervasive." *Am. Overseas Marine Corp. v. Patterson*, 632 So. 2s 1124, 1127-28 (Fla. Dist. Ct. App. 1994) (internal quotation marks omitted, emphasis added).  *See also Ruiz de Molina v Merritt & Furman Ins. Agency, Inc.*, 207 F.3d 1351, 1357 n.4 (11th Cir. 2000) (contacts must be "substantial, persistent, continuous and systematic").

[2] Although not specifically articulated, if the Plaintiffs had been making a general jurisdiction argument (which they do not even appear to make), they may also be arguably relying on their allegations in paragraph 21 of the Complaint (directed at Hotfile), in which they allege that Mr. Titov created Lemuria, which is incorporated in Florida.

declaration), the only remaining relevant allegations relate to Mr. Titov's alleged activities on behalf of Lemuria and Hotfile.

However, even assuming *arguendo* that Lemuria and Hotfile were engaged in business in Florida, such activities do not flow to Mr. Titov for consideration of the question of personal jurisdiction. This is because such consideration is barred by Florida's strong corporate shield doctrine. The "corporate shield" doctrine holds that the acts of a corporate employee performed in a corporate capacity do not form the basis for jurisdiction over the corporate employee in his individual capacity. *Doe v. Thompson*, 620 So. 2d 1004, 1006 (Fla. 1993).

In that case, the Florida Supreme Court held that the rationale of the doctrine "is the notion that it is unfair to force an individual to defend a suit brought against him personally in a forum with which his only relevant contacts are acts performed not for his own benefit but for the benefit of his employer." *Id.* (internal quotation marks and citations omitted). *See also Radcliffe v. Gyves*, 902 So. 2d 968, 972 n. 4 (Fla. 4th DCA 2005) ("Any activity in one's capacity as a corporate officer or director is exempted.").

Separate from the corporate shield doctrine, the formation of a Florida corporation is not itself sufficient to subject its principal to personal jurisdiction in the state. *See Beasley v. Diamond R. Fertilizer, Co., Inc.*, 710 So. 2d 1025, 1026 (Fla. Dist. Ct. App. 1998) ("Appellee contends that the mere formation of the corporation and the opening of a bank account prove 'an intent' [presumably on Beasley's part] to engage in a business venture in Florida sufficient to meet the statutory test for *in personam* jurisdiction. This is incorrect. The mere formation of a corporation in Florida by a non-resident, and even the conduct of business by the corporation Florida, do not subject the shareholder to the jurisdiction of Florida courts." (parenthetical in original));

The case of *Suroor v. First Inv. Corp.,* 700 So. 2d 139 (Fla. Dist. Ct. App. 1997) is directly on point.  In that case, the defendant Sheik Suroor held himself to be the owner of Florida property owned his corporation Peccany.  Suroor visited the property multiple times, made payments from his personal funds for the property, communicated directly with the plaintiff, FIC, while in Florida, and contracted to have services performed in Florida.  *Id.* at 141. Despite all of this, the court held that

> At most, these allegations established that Sheikh Suroor acted in furtherance of Peccany's interest in accordance with his role as an agent of the corporation.  In order to establish that Sheikh Suroor had subjected himself to personal jurisdiction in Florida, FIC was required to allege facts establishing that Sheikh Suroor had engaged in business activities, apart from his role as an agent of [the corporation], and had begun serving his own personal interests. . . .
>
> Furthermore, the actions of a corporation cannot be imputed to its shareholders for purposes of establishing long arm personal jurisdiction over the shareholder.  Thus, although FIC's second amended complaint refers to Sheikh Suroor as the "sole shareholder" or the "actual or beneficial owner" of Peccany, such references do not constitute jurisdictional allegations under our long arm statute.

*Id.* (multiple citations omitted).

Other than the disproved allegation regarding Mr. Titov's residency, each and every allegation in the Complaint relevant to Mr. Titov directly relates to activities undertaken as an employee or agent of, and for the benefit of either Hotfile or Lemuria.  *See* Complaint, ¶ 9 ("Titov . . . wrote the programming code for Hotfile's interface, was a significant investor in the company, and was one of a handful of senior executives who ran the daily operations of the business."), ¶ 19 ("He designed the Hotfile software, participated in the design of its business model, was one of only a handful of principals responsible for the daily operation of the service and profited from that business."), ¶ 21 ("Hotfile also utilized Lemuria Communications, a Florida corporation created by Defendant Titov to provide Internet hosting services to Hotfile."), ¶ 22 ("The Court has personal jurisdiction over Defendant Titov because he . . . conducted the

business of <u>Hotfile</u> in Florida."), ¶ 35 (Titov designed <u>Hotfile's</u> software and participated in

creating <u>its</u> business and practices), ¶ 36 (Titov has a financial stake in <u>Hotfile</u>) (emphasis added

in each).[3]

Because Plaintiffs have not alleged any facts from which the Court could conclude that

Mr. Titov has a personal connection with Florida that rises to the level of "continuous and

systematic general business contacts" with Florida, this Court does not have general personal

jurisdiction over Mr. Titov.

    B.      Mr. Titov is Not Subject to Specific Jurisdiction

    "When a forum seeks to assert specific personal jurisdiction over a nonresident

defendant, due process requires that the defendant have fair warning that a particular activity

may subject him to the jurisdiction of a foreign sovereign.  This fair warning requirement is

satisfied if the defendant has purposefully directed his activities at residents of the forum, and the

litigation results from alleged injuries that arise out of or relate to those activities."  *Healthcare

Appraisers, Inc. v. Healthcare FMV Advisors, LLC*, 10-80293-CIV, 2011 WL 4591960 (S.D.

Fla. Sept. 30, 2011) (internal citations and quotation marks omitted).

    Because Plaintiffs have not alleged any wrongdoing by Defendants following the filing of

the complaint in the *Disney* litigation, and any claims arising prior to January 17, 2011 are barred

by the statute of limitations, in order to survive this motion to dismiss, Plaintiffs must allege that

the instant litigation arises out of, or relate to, actions taken by Mr. Titovpersonally, which he

purposefully directed towards Florida between January 17, 2011 and February 8, 2011.

However, even if the Plaintiffs claims were not circumscribed by this short, three-week window,

---

[3] It should be noted that the Complaint does not actually allege that Titov performed any of the enumerated specific
actions in Florida.  Mr. Titov has included them in this recitation only for the purpose of being over-inclusive in his
reading of the Plaintiffs' allegations.  Even such an over-inclusive reading, however, falls far short of the allegations
necessary to support a claim of general personal jurisdiction.

they have not sufficiently alleged that Mr. Titov purposefully directed *any* activities at Florida that form the basis for their complaint.

Florida Statute § 48.193 lists nine activities through which specific jurisdiction over a foreign defendant may be obtained, only three of which are plausibly relevant to this case: (1) "Operating, conducting, engaging in, or carrying on a business or business venture in [Florida] or having an office or agency in [Florida];" (2) "Committing a tortious act within this state;" and (3) "Causing injury to persons or property within [Florida] arising out of an act or omission by the defendant outside [Florida], if, at or about the time of the injury . . . [t]he defendant was engaged in solicitation or service activities within [Florida]." Even with respect to these three factors, however, the Plaintiffs' jurisdictional arguments cannot survive.

First, as is discussed above, the Corporate Shield doctrine excludes from consideration those activities undertaken by Mr. Titov on behalf of either Lemuria or Hotfile. *Bloom v. A.H. Pond Co., Inc.*, 519 F. Supp. 1162, 1170 ("[U]nless the agents transact business on their own account and not on behalf of the corporation, the agents are not engaged in business so long as to sustain an application of the long-arm statute to them as individuals.").

Second, none of the facts as alleged by Plaintiffs with regard to non-party Lemuria have the required connection to the present litigation. Because Florida's long arm statute requires that the litigation "arise from" the alleged acts of the defendant, specific jurisdiction requires "some 'direct affiliation,' 'nexus,' or 'substantial connection' between the cause of action and the activities within the state." *Sun Trust Bank v. Sun International Hotels, Ltd.*, 184 F. Supp. 2d 1246, 1269 (S.D. Fla. 2001) (quoting *Citicorp. Ins. Brokers (Marine) Ltd. v. J.R. Charman*, 635 So. 2d 79, 81 (Fla. 1st DCA 1994). *See also Camp Illahee Investors, Inc. v. Blackman*, 870 So. 2d 80, 85 (Fla. Dist. Ct. App. 2d 2003) ("By its terms, section 48.193(1) requires connexity

between the defendant's activities and the cause of action."); *General Tire & Rubber Co. v. Hickory Springs Mfg. Co.*, 388 So. 2d 264, 266 (Fla. Dist. Ct. App. 5th 1980) ("Section 48.193 specifically limits jurisdiction to causes of action arising from the enumerated acts. . . . Appellants failed to show any connection between appellee's business activities in Florida and the cause of action and therefore the court was correct in dismissing Hickory Springs as a party defendant."). Lemuria's provision of internet hosting services to Hotfile, a ubiquitous service in the age of the internet, is not substantially connected to the causes of action alleged by Plaintiffs.

Third, none of the facts alleged by Plaintiffs were directed towards Florida, nor do the Plaintiffs even seriously allege as much. To the contrary, Plaintiffs allege that *Hotfile's* activities were directed only to the internet at large. *See* Complaint, ¶ 24 ([A]nyone with a computer and Internet connection could access any file on Hotfile."), ¶ 26 ("In addition to making its files freely available to anyone on the internet . . . ."), ¶ 27 ("Although anyone with an Internet connection could download a file from the service . . . ."). Plaintiffs fail even to allege that Mr. Titov, personally, directed any action which gave rise to their claims towards Florida.

Plaintiffs' only allegations regarding Florida in the entire Complaint are that (1) Hotfile "committed the tortious acts at issue in the state of Florida, acting in concert with Defendant Titov, a Florida resident," (2) Florida residents were uploading and downloading Plaintiff's works in Florida, and (3) Hotfile had a business relationship with Lemuria, a Florida corporation. Complaint, ¶ 21.

The first allegation appears to conclude that because Mr. Titov is a Florida resident – which he is not – Hotfile was committing alleged tortious acts in Florida. Because Mr. Titov is not a Florida resident, this allegation simply fails – neither Hotfile nor Mr. Titov were

committing any alleged tortious acts in Florida, nor can the Plaintiffs reasonably allege to the contrary.

The remaining allegations appear to allege personal jurisdiction under subpart (1) of Section 1(a) of the Florida long-arm statute – that is, operating, conducting, engaging in, or carrying on a business or business venture in Florida.[4]  However, the actions alleged by Plaintiffs do not constitute Titov (or Hotfile, for that matter) conducting business in Florida.  Putting aside once again the controlling corporate shield doctrine, under Section 48.193(1)(a), a defendant is only deemed to be "carrying on a business or business venture in Florida either itself or through an agent," if its activities "considered collectively . . . show a general course of business activity in the state for pecuniary benefit."  *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 627 (11th Cir. 1996) (*citing Dinsmore v. Martin Blumenthal Assocs. Inc.*, 314 So.2d 561, 564 (Fla. 1975)).

For the purposes of Section 48.193(1)(a), it is not enough for a defendant to have *contacts* with Florida for it to be "doing business" in Florida such that jurisdiction is proper under the state's long arm statute.  *See, e.g., Mold-Ex., Inc. v. Michigan Technical Representatives, Inc.*, 2005 U.S. Dist. LEXIS 35470, *9-11 (N.D. Fla. 2005) ("While MTR may have had 'continuous' telephonic and electronic communications with Mold-Ex at its office in Milton, Florida, as plaintiff contends . . . such communications cannot constitute 'conducting business' in Florida for purposes of satisfying the long-arm statute.  Similarly, that MTR sold automotive parts on behalf of Mold-Ex throughout the United States, as plaintiff further argues . . . does not support a conclusion that MTR was engaged in a business venture in Florida.");

---

[4] The only other remotely plausible subpart of the long-arm statute that could apply is subpart (6)(a), which requires causing injury to persons within Florida from acts or omissions outside Florida, if at the time of the injury the defendant was engaged in solicitation or service activities within the state.  However, this subpart is inapplicable because Plaintiffs have not alleged that they have suffered any injury in Florida.  In any case, Plaintiffs would still have to show that Mr. Titov engaged in solicitation or service activities within Florida that gave rise to their cause of action – a factor with an analysis substantially similar to whether Mr. Titov was operating a business within Florida. It is an element that the Plaintiffs have not – and cannot – allege.

*Horizon Aggressive Growth, L.P. v. Rothstein-Kass, P.A.*, 421 F.3d 1162, 1167-68 (11th Cir. 2005) ("It is undisputed that neither Kass California nor Wolf maintained a Florida office or were licensed to conduct business in Florida.  Horizon admitted that Kass performed all its work for Horizon out of its California offices. While Kass made telephonic and electronic communications from its California offices into Florida, these communications cannot constitute 'conducting business' in Florida.  Moreover, the fact that Kass rendered in California professional services for the benefit of a Florida citizen was insufficient by itself to trigger the provisions of the Florida Long-Arm statute.  Additionally, we reject Horizon's suggestion that the assertion of jurisdiction was appropriate because Kass's ability to electronically access Horizon's Florida-based computer files allowed Kass to perform services as if it was in Florida. The Long-Arm provision requires that a defendant conduct business in Florida, and therefore conducting business from a California office as if in Florida is insufficient under the plain text of the statute.  Moreover, Horizon's contention that a company's physical location 'is rendered irrelevant in this electronic age,' belies the fact that state territorial boundaries remain relevant to jurisdictional inquiries.  Accordingly, while the advances of the electronic age have undoubtedly facilitated the practice of interstate and global commerce, they cannot nullify the explicit requirements of the Florida Long-Arm statute.  Because Kass physically performed all its work from its California offices, it cannot be argued that its remote access to Horizon's files constituted 'conducting business' in Florida as defined in FLA. STAT. ch. 48.193(1)(a)."); *Scharrer v. Fundamental Admin. Servs.,* 2012 U.S. Dist. LEXIS 168017, 12-13 (M.D. Fla. 2012) ("[T]he Long-Arm provision requires that a defendant conduct business in Florida, and therefore conducting business from a[n] [out-of-state] office as if in Florida is insufficient under the plain text of the statute.  Scharrer and THMI assert in their complaint that the 'FAS Defendants are

13

operating, conducting, engaging in, and carrying on business in [Florida].'  However, none of the Defendants have an office in Florida or are registered to do business or licensed to practice in Florida.  Zack and Anderson, in their personal capacities, do not have any clients in Florida, and FAS has only one client in Florida which generates less than one percent of its revenue nationwide.  Therefore, FAS, Zack, and Anderson do not qualify as conducting a business in Florida under the above-enumerated factors.  Furthermore, even if the Defendants' contacts with the state could be characterized as an ongoing business venture, the Eleventh Circuit has clearly stated that the business activity must occur within Florida."  (citing *Horizon Aggressive Growth*, 421 F.3d at 1167, for "finding that less than five percent of gross revenue counseled against a finding of engaging in general course of business.")).

Here, too, there is a complete absence of any allegation from which the Court could conclude that Mr. Titov was "conducting business in Florida" so as to bring him within the purview of chapter 48.193(1)(1).  Accordingly, Plaintiffs' complaint must be dismissed as against Mr. Titov for lack of personal jurisdiction.

## III.   Personal Jurisdiction Cannot be Exercised Over Mr. Titov Consistent With Constitutional Due Process Requirements

Because the conduct alleged by Plaintiffs does not bring Mr. Titov within the confines of the Florida Long Arm Statute, the Court need go no further: the case must be dismissed for lack of personal jurisdiction.  *See*, *e.g.*, *Estate of Scutieri v. Chambers*, 386 Fed. App'x 951, 953 (11th Cir. 2010) ("Because we conclude that Florida's long-arm statute does not extent to the defendants' conduct as alleged in the Complaint, we need not evaluate the due process implications.").

Nevertheless, even if the Court were to find that the Plaintiffs have satisfied the requirements of Florida's long arm statute, it would then have to determine whether personal

jurisdiction could be properly exercised over Mr. Titov consistent with the Due Process requirements of the Fourteenth Amendment of the United States Constitution. It cannot.

In determining whether the requirements of due process are met, the Court conducts another two-step inquiry. First, the Court "must decide whether each defendant has established 'minimum contacts' with Florida. Second, [the Court] must determine whether the exercise of personal jurisdiction would offend 'traditional notions of fair play and substantial justice.'" *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 258 (11th Cir. 1996). "Only if both prongs of the analysis are satisfied may a federal or state court exercise personal jurisdiction over a nonresident defendant." *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990).

A.    Mr. Titov Did Not Have the Contacts Necessary with Florida

"Where a forum seeks to assert specific personal jurisdiction over a nonresident defendant, due process requires the defendant have 'fair warning' that a particular activity may subject him to the jurisdiction of a foreign sovereign." *Robinson,* 74 F.3d at 258, *citing Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472 (1985). "This fair warning requirement is satisfied if the defendant has 'purposefully directed' his activities at the forum . . . and the litigation results from alleged injuries that "arise out of or relate to" those activities." *Robinson,* 74 F.3d at 258 (citations omitted). "Additionally, the defendant's conduct and connection with the forum must be of a character that he should reasonably anticipate being haled into court there." *Id.* (multiple citations omitted). "The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State . . . it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Id.* (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).

None of the facts alleged by the Plaintiffs are sufficient to satisfy the minimum contacts prong of the analysis.  First, Mr. Titov is not a Florida resident.  Second, Hotfile's relationship with Lemuria is not sufficient (or even relevant) to satisfy due process requirements.[5]  Extensive precedent supports the proposition that, entering into a relationship with a domain name registrar (a ubiquitous internet service which is comparable to Lemuria's webhosting services), does not subject the individual or business registering the domain to personal jurisdiction in the state of the registrar.  *See, e.g., Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 223 (4th Cir. 2002) ("[T]he mere act of registering the Domain Names in Virginia was deemed insufficient to provide personal jurisdiction."); *Graduate Mgmt. Admission Council v. Raju*, 241 F. Supp. 2d 589, 595 (E.D. Va. 2003) ("First, mere registration of the domain name with a company located in Virginia does not support personal jurisdiction in this state."); *America Online, Inc. v. Huang*, 106 F. Supp. 2d 848, 856-57 (E.D. Va. 2000); *Heathmount A.E. Corp. v. Technodome.com*, 106 F. Supp. 2d 860, 867 (E.D. Va. 2000); *Proprietors of Strata Plan No. 36 v. Coral Gardens Resort Mgmt., Ltd.*, 2009 U.S. Dist. LEXIS 97704 (E.D. Va. 2009).[6] If the law were to the contrary, tens of millions of businesses and individuals would be subject to personal jurisdiction in Arizona simply because they had registered a domain through GoDaddy.com.

To the extent that Hotfile and Lemuria may have entered into some form of business relationship or agreement, this would still amount to nothing more than "merely entering into a contract with a forum resident," which "does not provide the requisite contacts between a [party] and the forum state."  *Borg-Warner Acceptance Corp. v. Lovett & Tharpe, Inc.*, 786 F.2d 1055,

---

[5] Even if Hotfile's alleged business relationship with Lemuria were relevant to the question of whether personal jurisdiction could be exercised over *Hotfile* (a questionable premise in its own right), the relationship can have no relevance whatsoever as to whether personal jurisdiction may be constitutionally asserted over Mr. Titov. Nevertheless, in the interest of over-inclusiveness, Mr. Titov discusses the allegations as to Hotfile as if they had some relevance to him personally.

[6] Many case on this point originate from Virginia because that is where Network Solutions – one of the largest domain name registrars – and its previous parent corporation VeriSign – the registry that oversees all ".com" registrations – are headquartered.

1059 (11th Cir.1986).[7]   Indeed, the Court in *Pres-Kap v. System One, Direct Access, Inc.*

expressly held that utilizing a computer database located in Florida did not result in the necessary

minimum contacts for jurisdiction to exist in Florida.  636 So. 2d 1351, 1353 (Fla. Dist. Ct. App.

1994) ("The additional factor in this case that the computer database for the contracted-for

information happens to be located in Florida cannot change this result.").

> The *Pres-Kap* court went on to note that:

>> Indeed, a contrary decision would, we think, have far-reaching implications for business and professional people who use "on-line" computer services for which payments are made to out-of-state companies where the database is located.  Across the nation, in every state, customers of "on-line" computer information networks have contractual arrangements with out-of-state supplier companies, putting such customers in a situation similar, if not identical, to the defendant in the instant case.  Lawyers, journalists, teachers, physicians, courts, universities, and business people throughout the country daily conduct various types of computer-assisted research over telephone lines linked to supplier databases located in other states.  Based on the trial court's decision below, users of such "on-line" services could be haled into court in the state in which supplier's billing office and database happen to be located, even if such users, as here, are solicited, engaged, and serviced entirely instate by the supplier's local representatives. Such a result, in our view, is wildly beyond the reasonable expectations of such computer-information users, and, accordingly, the result offends traditional notions of fair play and substantial justice.

*Id.*

This leaves only Plaintiffs' allegation that Hotfile's prior operation of the Hotfile website,

which was equally accessible anywhere in the world, established the minimum contacts

necessary to exercise jurisdiction over Hotfile in Florida (and, presumably every other state and

country where the internet can be accessed) because some users may have uploaded or

downloaded Plaintiffs' works in Florida.  Although the Hotfile website was both commercial and

interactive, as an Iowa district court once noted, such a website "is arguably no more directed at

---

[7] Again, of course, such a relationship would still be a step removed from Mr. Titov himself.

Iowa than at Uzbekistan." *Lindgren v. GDT, L.L.C.*, 312 F. Supp. 2d 1125, 1131 (S.D. Iowa 2004).

That holding is consistent with the law in this jurisdiction and elsewhere. *See, e.g., Liberty Media Holdings, LLC v. Letyagin*, Civil Action No. 11-62107-CV-WILLIAMS (S.D. Fla. 2011) ("Plaintiff has not shown that Defendant's conduct can, in line with the Constitution, subject it to jurisdiction in this forum.  Plaintiff contends that Defendant has 'considerable' web traffic originating from the United States and has presented an exhibit showing that fifteen percent of the visitors to its website are from the United States.  Precedent, however, establishes that maintaining a website accessible to users in a jurisdiction does not subject a defendant to be sued there; those users must be directly targeted, such that the defendant can foresee having to defend a lawsuit."); *Verizon Trademark Servs., LLC v. Producers, Inc.,* 810 F. Supp. 2d 1321 (M.D. Fla. 2011) (holding that the operation of a website – even an interactive one – was an insufficient basis on its own to assert jurisdiction); *Roblor Marketing Group, Inc. v. GPS Industries, Inc.*, 645 F. Supp. 2d 1130 (S.D. Fla. 2009) (rejecting personal jurisdiction over the defendant, despite the defendant's operation of an interactive website accessible in Florida, because "traditional notions of due process" precluded an exercise of jurisdiction where the defendant "could not have foreseen being hailed in Florida.  [The defendant] is not licensed to do business in Florida and has no income from direct Florida sales. [The defendant] has no agents, resellers, and distributors, nor any presence whatsoever in Florida.  [The defendant] has never targeted Florida residents through an advertising campaign.  There is no evidence that [the defendant] holds any bank account or has any investments in Florida..."); *Zamora Radio, LLC v. Last.FM, Ltd.*, 2011 U.S. Dist. LEXIS 69101 (S.D. Fla. 2011) (rejecting jurisdiction over foreign defendants who operate a highly interactive website because none of the activities were

specifically aimed at Florida, as opposed to users of the internet world-wide); *Instabook Corporation v. Instantpublisher.com*, 469 F. Supp. 2d 1120 (M.D. Fla. 2006) (finding insufficient contacts in a patent infringement case since, among other reasons, "Defendant could not reasonably anticipate being haled into court in Florida based on its operation of interactive websites accessible in Florida and its sales to two Florida residents" in the absence of 'targeting or solicitation of Florida residents'"). *See also Cybersell, Inc. v. Cybersell, Inc.,* 130 F.3d 414, 418-20 (9th Cir. 1997) (noting that maintaining a website was not sufficient to constitute "purposeful availment" without "something more" directly targeting the forum state); *Dakota Indus., Inc. v. Dakota Sportswear, Inc.,* 946 F.2d 1384, 1390-91 (8th Cir. 1991) (*quoting Brainerd v. Governors of Univ. of Alberta*, 873 F.2d 1257, 1260 (9th Cir. 1989)); *be2 LLC v. Ivanov*, 642 F.3d 555, 558 (7th Cir. 2011) ("If the defendant merely operates a website, even a 'highly interactive' website, that is accessible from, but does not target, the forum state, then the defendant may not be hauled into court in that state without offending the Constitution."); *Quick Technologies, Inc. v. The Sage Group, PLC*, 313 F.3d 338, 345 (5th Cir. 2002) ("Sage Group's operation of a website containing company and product information and links to U.S. subsidiaries also does not provide sufficient grounds for the exercise of personal jurisdiction."); *See, Inc. v. Imago Eyewear Pty, Ltd.*, 167 Fed. App'x 518, 522 (6th Cir. 2006) (upholding the district court's decision that jurisdiction could not be maintained because "the Defendants' website, did not provide sufficient contacts with the United States to satisfy due process. We agree."); *Toys "R" Us, Inc. v. Step Two, S.A.,* 318 F.3d 446, 451-52 (3d Cir. 2003) ("The precise question raised by this case is whether the operation of a commercially interactive web site accessible in the forum state is sufficient to support specific personal jurisdiction, or whether there must be additional evidence that the defendant has 'purposefully availed' itself of the

privilege of engaging in activity in that state. Prior decisions indicate that such evidence is necessary, and that it should reflect intentional interaction with the forum state."); *ESAB Group, Inc. v. Centricut, L.L.C.*, 34 F. Supp. 2d 323, 331 (D.S.C. 1999) ("While it is true that anyone, anywhere could access Centricut's home page, including someone in South Carolina, it cannot be inferred from this fact alone that Centricut deliberately directed its efforts toward South Carolina residents."); *Johnson v. Arden*, 614 F.3d 785, 797-98 (8th Cir. 2010) ("[T]he Johnsons have failed to prove that www.BoutiqueKittens.com is uniquely or expressly aimed at Missouri.").[8]

Because Plaintiffs have failed to allege that Mr. Titov had sufficient minimum contacts with Florida to satisfy the Due Process requirements of the Fourteenth Amendment, the case against Mr. Titov must be dismissed for lack of personal jurisdiction.

B.     The Exercise of Personal Jurisdiction Over Mr. Titov Would Offend Traditional Notions of Fair Play and Substantial Justice

Finally, even if Plaintiffs had properly alleged minimum contacts with Florida, the Court would still have to determine whether an exercise of personal jurisdiction over Mr. Titov comports with "fair play and substantial justice." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 476 (1985), *quoting Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 320 (1945). In making such a determination, the Court weighs the strength of the Plaintiff's case on minimum contacts with the forum such that the defendant should reasonably anticipate being haled into court there, with other factors which may still counsel against an exercise of jurisdiction. *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 258-59 (11th Cir. Fla. 1996).

Given that (1) Mr. Titov did not himself operate the Hotfile Website when it was operational (Defendant Hotfile did), (2) Mr. Titov has no personal connections with Florida and

---

[8] At the risk of being overly repetitive, even if the allegation was relevant to establish personal jurisdiction over Hotfile, it would have no import for an analysis as to whether personal jurisdiction could be asserted over Mr. Titov consistent with the Due Process Clause of the United States Constitution.

(3) has no personal connections with the Hotfile Website's users alleged to have infringed Plaintiffs' works, there is no basis for Mr. Titov to have reasonably anticipated being haled into court in Florida.  Therefore, the Complaint as against Mr. Titov should be dismissed for lack of personal jurisdiction.

<u>**CONCLUSION**</u>

For the reasons state herein, Mr. Titov respectfully requests that the Plaintiffs' Complaint be dismissed as against Mr. Titov in accordance with Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction.

**Respectfully submitted:**

/s/ Valentin Gurvits
Valentin D. Gurvits (# 643572 - *pro hac vice* pending)
Matthew Shayefar (# 685927 - *pro hac vice* pending)
BOSTON LAW GROUP, PC
825 Beacon Street, Suite 20
Newton Centre, MA  02459
Telephone: (617) 928-1804
Facsimile: (617) 928-1802
vgurvits@bostonlawgroup.com
matt@bostonlawgroup.com

/s/ Brady J. Cobb
Brady J. Cobb, Esquire
Florida Bar No. 031018
COBB EDDY MIJARES, PLLC
642 Northeast Third Avenue
Fort Lauderdale, Florida 33304
Telephone (954) 527-4111
Facsimile  (954) 900-5507
bcobb@cemlaw.net

/s/ Evan Fray-Witzer
Evan Fray-Witzer (# 564349 - *pro hac vice* pending)
CIAMPA FRAY-WITZER, LLP
20 Park Plaza, Suite 505
Boston, MA 02116
Telephone: (617) 426-0000
Facsimile: (617) 423-4855
Evan@CFWlegal.com

*Attorneys for Anton Titov*

## CERTIFICATE OF SERVICE

**I hereby certify** that a true and correct copy of the foregoing was served electronically via the CM/ECF electronic filing system on all counsel or parties of record on the attached service list this 21st day of July, 2014.

/s/ Brady J. Cobb
Brady J. Cobb