# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No.: 14-20200-CIV-BLOOM/VALLE

PEARSON EDUCATION, INC., ELSEVIER, INC.,
CENGAGE LEARNING, INC., JOHN WILEY &
SONS, INC., AND MCGRAW-HILL GLOBAL
EDUCATION HOLDINGS, LLC,

      *Plaintiffs*,

v.

HOTFILE CORP. and ANTON TITOV,

      *Defendants*.

_____/

## PLAINTIFFS' OPPOSITION TO DEFENDANT ANTON TITOV'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT .......................................................................................... 1

BACKGROUND .................................................................................................................. 2

ARGUMENT ........................................................................................................................ 6

    I.      STANDARD OF REVIEW AND COLLATERAL ESTOPPEL ................................. 7

    II.    FLORIDA'S LONG-ARM STATUTE ...................................................................... 8

        A.  Titov is Subject to this Court's General Jurisdiction ................................................. 8

        B.  Titov is Also Subject to this Court's Specific Jurisdiction .................................... 10

            1.   Titov Committed a Tort in Florida.................................................................. 10

            2.   Specific Jurisdiction Is Present Because Titov Engaged in the Business of Hotfile and Its Related Entity Lemuria Communication, Inc. in Florida. ... 13

        C.  The Corporate Shield Doctrine Does Not Apply Here ......................................... 14

    III.   DUE PROCESS ....................................................................................................... 15

        A.  Minimum Contacts Exist Between Titov and Florida to Satisfy Due Process ...... 15

        B.  The Exercise of Personal Jurisdiction Over Titov Comports with Traditional Notions of Fair Play and Substantial Justice....................................... 18

    IV.   IN THE ALTERNATIVE, JURISDICTIONAL DISCOVERY IS WARRANTED ........................................................................................................... 19

CONCLUSION .................................................................................................................... 20

# TABLE OF AUTHORITIES

## CASES

*Abramson v. Walt Disney Co.*, 132 F. App'x 273 (11th Cir. 2005) ................................................9

*Am. Int'l Airways v. Kitty Hawk Group*, 834 F. Supp. 222 (E.D. Mich. 1993) ...........................18

*Arch Aluminum & Glass Co. v. Haney,* 964 So. 2d 228 (Fla. Dist. Ct. App. 2007) .....................12

*Axel Braun Prods. v. Doe*, No. 11-56 (EGS/JMF), 2012 WL 177856, 2012 U.S.
Dist. LEXIS 6967 (D.D.C. Jan. 19, 2012) ......................................................................................12

*Beasley v. Diamond R. Fertilizer, Co.*, 710 So. 2d 1025 (Fla. Dist. Ct. App. 1998) .....................9

*Byron v. Marine Carriers (USA)*, 668 So. 2d 273 (Fla. Dist. Ct. App. 1996) ..............................14

*Cable/Home Commc'n Corp. v. Network Prods., Inc.*, 902 F.2d 829 (11th Cir. 1990) ....10, 12, 14

*Carib-USA Ship Lines Bahamas Ltd. v. Dorsett*, 935 So. 2d 1272 (Fla. Dist. Ct. App. 2006) .....15

*Disney Enters. v. Hotfile Corp.*, No. 1:11-cv-20427-CIV-KMW, 2013 WL 6336286,
2013 U.S. Dist. LEXIS 172339 (S.D. Fla. Aug. 28, 2013) .................................................. *passim*

*Eaton v. Dorchester Dev., Inc.*, 692 F.2d 727 (11th Cir. 1982) .............................................. 19-20

*Farrell v. Royal Caribbean Cruises, Ltd.*, 917 F. Supp. 2d 1248 (S.D. Fla. 2013) ......................19

*Foreign Imported Prods. & Publ., Inc. v. Grupo Indus. Hotelero, S.A.*,
No. 07—22-66-CIV-GOLD/MCALILY, 2008 WL 4724495, 2008 U.S. Dist.
LEXIS 108705 (S.D. Fla. Oct. 24, 2008) .............................................................................. *passim*

*Horizon Aggressive Growth, L.P. v. Rothstein-Kass, P.A.*, 421 F.3d 1162 (11th Cir. 2005). .......13

*In re Air Crash near Rio Grande P.R. on Dec. 3, 2008,* No. 11-md-02246-KAM,
2012 WL 113774, 2012 U.S. Dist. LEXIS 4568 (S.D. Fla. Jan. 13, 2012) ....................................8

*Instabook Corp. v. Instantpublisher.com*, 469 F. Supp. 2d 1120 (M.D. Fla. 2006) .....................17

*Int'l Shoe Co. v. Washington,* 326 U.S. 310 (1945) .....................................................................15

*Kitroser v. Hurt*, 85 So. 3d 1084 (Fla. 2012) ...........................................................................7, 14

*KVAR Energy Sav., Inc. v. Tri-State Energy Solutions, LLP*, No. 6:08-cv-85-Orl-19KRS,
2009 WL 103645, 2009 U.S. Dist. LEXIS 3007 (M.D. Fla. Jan. 15, 2009) ........................8, 9, 15

## TABLE OF AUTHORITIES
(Continued)

**CASES**

*Licciardello v. Lovelady*, 544 F.3d 1280 (11th Cir. 2008) ..........................................10, 11, 12, 19

*Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339 (11th Cir. 2013).......................... *passim*

*Madara v. Hall*, 916 F.2d 1510 (11th Cir. 1990).........................................................................7

*McKinnis v. Mosely,* 693 F.2d 1054, 1058 (11th Cir. 1982)........................................................7

*Miller's Ale House, Inc. v. Boynton Carolina Ale House, LLC*, 702 F.3d 1312
(11th Cir. 2012).............................................................................................................................8

*Minsurg Int'l, Inc. v. Frontier Devices, Inc.*, 2011 U.S. Dist. LEXIS 37967 (M.D. Fla. 2011)....14

*Moltz v. Seneca Balance, Inc.,* 606 F. Supp. 612 (S.D. Fla. 1985).................................................7

*Parklane Hosiery Co. v. Shore*, 439 U.S. 322 (1979).....................................................................8

*Posner v. Essex Ins. Co.*, 178 F.3d 1209 (11th Cir. 1999).......................................................7, 15

*Pres-Kap v. System One, Direct Access, Inc.*, 636 So. 2d 1351 (Fla. Dist. Ct. App. 1994).........17

*R&R Games, Inc. v. Fundex Games, Ltd.*, 2013 WL 3729309,
2013 U.S. Dist. LEXIS 97621 (M.D. Fla. July 12, 2013) ...................................................7, 10, 14

*Roblor Mktg. Group v. GPS Indus., Inc.*, 645 F. Supp. 2d 1130 (S.D. Fla. 2009) .......................17

*Suroor v. First Inv. Corp.*, 700 So. 2d 139 (Fla. Dist. Ct. App. 1997). ....................................9-10

*Taylor v. Sturgell*, 553 U.S. 880 (2008)........................................................................................8

*Verizon Trademark Servs., LLC v. Producers, Inc.*, 810 F. Supp. 2d 1321 (M.D. Fla. 2011) 16-17

*Zamora Radio, LLC v. Last.fm, Ltd.*, No. 09-20940-CIV-TORRES, 2011 WL 2580401,
2011 U.S. Dist. LEXIS 69101 (S.D. Fla. June 28, 2011) ...............................................................17

*Zippo Mgf. Co. v. Zippo Dot Com*, 952 F. Supp. 1119 (W.D. Pa. 1997).....................................16

# TABLE OF AUTHORITIES
### (Continued)

**STATUTES**

Fla. Stat. § 48.193 ................................................................................. *passim*

17 U.S.C. § 504 ................................................................................................14

**RULES**

Fed. R. Civ. P. 4 ..............................................................................................20

Pearson Education, Inc., Elsevier, Inc., Cengage Learning, Inc., John Wiley & Sons, Inc., and McGraw-Hill Global Education Holdings, LLC ("Plaintiffs") respectfully submit this Opposition to Defendant Anton Titov's Motion to Dismiss for Lack of Personal Jurisdiction ("Motion").

## PRELIMINARY STATEMENT

In a related case, Judge Kathleen Williams recently held that Defendant Anton Titov ("Titov") is personally responsible for the mass infringement of copyrighted works that has taken place through the Hotfile online service. Nothing prevents this Court from now adjudicating Plaintiffs' claim against Titov over the same infringing activity. Titov consented to and "invoked" this Court's jurisdiction when he chose to defend that related case. Even without such consent, Titov has extensive deliberate contacts with Florida and purposefully availed himself of the privilege of doing business here.

In finding Titov liable on an identical vicarious copyright infringement claim, Judge Williams determined that Titov is personally responsible for Hotfile's many contacts with Florida, from its interactive website's accessibility in Florida to its closely held ISP's domicile in Florida to its DMCA agent's situs in Florida. Titov traveled to Florida on many occasions, actually living in Florida in 2010, all the while conducting the business of Hotfile and its ISP-affiliate, Lemuria Communications, and failing to exercise his and Hotfile's right and ability to stop or limit the infringement occurring on Hotfile's website. What is more, for the benefit of his new business venture, Titov continues to operate Lemuria in Florida and has even engaged the same DMCA agent in Florida. Thus, Titov is subject to general jurisdiction in this forum under Florida's long-arm statute, § 48.193(2), based on his continuous and systematic business activities here.

Titov is also subject to specific jurisdiction under § 48.193(1)(a) of the Florida long-arm statute because Plaintiffs' claim of vicarious infringement arises out of and relates directly to

Titov's connections with Florida.  During his many trips to and significant time in Florida, Titov conducted the business of Hotfile, including by failing to exercise his and Hotfile's right and ability to stop or limit the infringement occurring on Hotfile's website.  Plaintiffs suffered injury in Florida as residents and students in the state obtained copies of Plaintiffs' works from Hotfile rather than via legitimate channels.  In addition, Titov alone founded and manages Lemuria in Florida, which Judge Williams found was one of the "mechanisms necessary" for Hotfile to operate its infringing website.

## BACKGROUND

As indicated above, this Court has already adjudicated Defendant Anton Titov to be individually liable for the Hotfile users' copyright infringement on the Hotfile website.  In a related case, *Disney Enters. v. Hotfile Corp.*, No. 1:11-cv-20427-CIV-KMW (the "Disney Action"), Judge Kathleen Williams found Defendants Hotfile Corp. and Titov liable for vicarious copyright infringement, and granted summary judgment against them as to a claim all-but identical to Plaintiffs' claim in this case.  *See* 2013 WL 6336286, 2013 U.S. Dist. LEXIS 172339, at *134-44 (S.D. Fla. Aug. 28, 2013) (the "Disney Order").

Plaintiffs allege that Defendants Hotfile and Titov—through their operation of the website located at www.hotfile.com—engaged on a massive scale in vicarious infringement of Plaintiffs' copyrighted textbooks and other educational materials.  Compl. ¶¶ 1-7.  Plaintiffs allege that Defendants encouraged their users to upload infringing copies of Plaintiffs' valuable, copyrighted educational content to Hotfile's computer servers and to promote those works for download by other users, including by providing Hotfile's users or "affiliates" with financial incentives to engage in such conduct.  *Id.* ¶¶ 24-30.  Defendants' model for generating revenue depended on their users uploading and promoting these infringing works.  *Id.*  Defendants were fully aware of the infringement to which they materially contributed.  *Id.* ¶ 32.  Moreover, Defendants obtained a financial benefit from infringement, *id.* ¶ 27, that they had the right and

2

ability to control, but did not stop, *id.* ¶¶ 32-33. Plaintiffs allege that, as a result, Defendants are liable for vicarious copyright infringement.

With respect to Defendant Titov in particular, Plaintiffs allege that, acting in concert with Defendant Hotfile, he committed a tortious act in Florida. Compl. ¶ 21. In addition, Plaintiffs allege that the Court has personal jurisdiction over Titov because he "conducted the business of Hotfile in Florida." *Id.* ¶ 22. Plaintiffs allege that the business of Hotfile was to provide an instrument for, encourage, and profit from its users' infringement of copyrighted works. *Id.* ¶ 6. The Complaint alleges specific conduct that makes Titov vicariously liable for Hotfile users' infringement of Plaintiffs' copyrights. In particular, Titov "designed the Hotfile software, participated in the design of [Hotfile's] business model, was one of only a handful of principals responsible for the daily operation of [Hotfile,] and profited from [Hotfile's] business." *Id.* ¶ 19. Still more, the Complaint alleges that Titov "participated in creating Hotfile," was a "senior executive who concurred with the adoption of all of Hotfile's business practices including its failure to take adequate steps to protect against infringement of Plaintiffs' copyrighted works," and "created Lemuria Communications [a Florida corporation] to provide Internet hosting services to Hotfile," which "stored all the infringing content at issue in this case." *Id.* ¶ 35.

Hotfile has not challenged the Court's jurisdiction over it, either in the Disney Action or in this one. In the Disney Action, Titov made an unsuccessful challenge to personal jurisdiction. However, Judge Williams found that "in asserting defenses, filing motions related to the record, and *personally attending* oral argument, Titov has submitted to – has invoked – the jurisdiction of this Court." Disney Order, 2013 U.S. Dist. LEXIS 172339, at *146 (emphasis added).

In challenging personal jurisdiction in the instant action, Titov downplays his role in the infringement and his contacts with Florida. Titov even goes so far as to say that he "never owned or operated the Hotfile Website." Decl. of Anton Titov in Supp. of Mot. to Dismiss for Lack of Personal Jurisdiction ("Titov Decl.") ¶ 4. Yet Titov's sworn declaration in this case is

directly contradicted by Judge Williams's findings of fact and law in the Disney Order, as well as his own prior sworn declarations in various actions, including the Disney Action.

Specifically, Judge Williams found that Titov was "**a critical actor**" responsible for Hotfile's operations and, ultimately, its infringement.  2013 U.S. Dist. LEXIS 172339, at *144 (emphasis added).  In so finding, the Court cited evidence that showed Titov's "**dominant influence**" over Hotfile.  *Id.* (emphasis added).  The Court said,

> First, Titov is a <u>high-ranking</u>, <u>central figure</u> at Hotfile.  He owns a stake in the company nearly as large as its other … shareholders and runs it in equal part ….
> In his role, Titov has advanced, rejected, agreed upon or failed to block every decision that has shaped the company, including the efforts Hotfile took to identify and remove infringing content, … and deciding how to reward Hotfile's affiliates.  Moreover, Titov … was indispensable in the company's formation, crucial to the development of its business model, and continues to be involved in its business strategy.  Titov acknowledges possessing power of attorney for the company and acting as its manager when authorized.
>
> In addition, Titov has personally had a hand in every aspect of the conduct underpinning the [plaintiffs'] theories of liability in this case.  For example, at the outset, Titov wrote the programming code that runs the Hotfile interface and enables direct infringers to upload and download protected works.  More recently, he undertook a management role in which he oversees contractors working for Hotfile and participates in maintaining Hotfile's storage and delivery technology.
> Titov also has a significant impact in his work for Hotfile's related entities.  He is the sole owner, manager and director of Lemuria [Communications, a Florida corporation], which owns and maintains the servers on which the infringing files at issue are stored ….  Together, these companies provide mechanisms necessary for Hotfile to collect its revenue, for its users to access its services, and for the entire system to sustain business and grow.

2013 U.S. Dist. LEXIS 172339, at *141-42 (emphasis added).  In finding Titov vicariously liable for "the acts of infringement occurring on Hotfile's network," *id.* at *144, the Court cited "specific evidence showing Titov's actual awareness of infringement on Hotfile's network."  *Id.* at *142.  "<u>Significantly, Titov appears on nearly every document that the Court considered in determining liability.  Titov also put in place Hotfile's DMCA agent, who received millions of</u>

infringement notices." *Id.* at *143 (emphasis added).[1]

In addition to the above, Titov is "Founder and President," (Decl. of Anton Titov ¶ 3, Disney Action, Feb. 28, 2011, ECF No. 30-1)[2] and "sole owner, manager and director," (Def. Titov's Statement of Undisputed Material Facts ¶ 13, Disney Action, Mar. 5, 2012, ECF No. 317)[3] (citing Titov's sworn declaration)), of Lemuria.  Titov traveled to Florida "in October 2009 to incorporate and set up Lemuria's business."  Disney Action, ECF No. 30-1 ¶ 3, Mustico Decl. Ex. 9.  Titov then "spent the summer of 2010 in Miami Beach," (*id.* ¶ 4), and visited Florida according to Titov "up to ten" times "to perform work on behalf of [Lemuria]" (Disney Action, ECF No. 317 ¶ 16, Mustico Decl. Ex. 10).  "Lemuria was formed for the purpose of providing web-hosting services, in particular for Hotfile.com."  Decl. of Anton Titov ¶ 5, *Perfect 10, Inc. v. Hotfile Corp.*, No. 10-CV-2031 MMA (S.D. Cal. Dec. 20, 2010), ECF No. 12-1.[4]  Titov created and operated Lemuria (in Florida) to deliver Internet connectivity to Hotfile, and avoid connectivity problems in the future.  Disney Action, ECF No. 317 ¶ 13, Mustico Decl. Ex. 10.  Judge Williams expressly noted, "Lemuria was formed one month after Hotfile's previous Internet service provider informed [Hotfile] that it had received a large number of infringement complaints from copyright holders and two months after a copyright holder served a subpoena on that Internet service provider."  Disney Order, 2013 U.S. Dist. LEXIS 172339, at *45 n.10.

Lemuria's business was inextricably linked to Hotfile's.  The work of Lemuria was to provide Hotfile with uninterrupted internet connectivity and the servers on which the infringing files at issue were stored (Disney Action, ECF No. 317 ¶ 13, Mustico Decl. Ex. 10); *i.e.,* to

---

[1] Because the DMCA agent that Titov appointed is located in Florida, Titov personally directed all communication with Hotfile regarding infringement of Plaintiffs' and others' copyrights to this forum.  To the extent Titov was responsible for handling reports of infringement, *see* Disney Order, 2013 U.S. Dist. LEXIS 172339, at *46-47, he was necessarily interacting and communicating by means of Florida.

[2] Attached to Decl. of Kerry M. Mustico in Supp. of Pls.' Opp'n to Def. Anton Titov's Mot. to Dismiss for Lack of Personal Jurisdiction ("Mustico Decl.") as Exhibit 9.

[3] Attached to Mustico Decl. as Exhibit 10.

[4] Attached to Mustico Decl. as Exhibit 11.

furnish the "mechanisms necessary" for Hotfile's and Titov's infringing business (2013 U.S. Dist. LEXIS 172339, at *142). Lemuria even paid many of Hotfile's expenses. *Id*. During his many and extended stays in Florida in 2009 and 2010, Titov conducted the business of Lemuria and, necessarily, Hotfile, whether by affirmative acts or by failing to stop or limit the infringement on the Hotfile network. 2013 U.S. Dist. LEXIS 172339, at *133-34, 143-44 (finding Titov to be a dominant influence over Hotfile who failed to exercise his right and ability to stop or limit the infringement on Hotfile's site).

Titov's contacts with Florida did not end in 2010. Titov says that his "only business connections with Florida were my infrequent and passing contacts in connection with my work for Lemuria Communications Inc." Titov Decl. ¶ 8. Titov omits mentioning that he lived in Florida for a time in 2010. *See* Disney Action, ECF No. 30-1 ¶ 4, Mustico Decl. Ex. 9. Nor does Titov's declaration indicate how many times he visited Florida, when he was most recently in Florida, the length of his visits to Florida, or what "work" Titov has engaged in on behalf of Lemuria in Florida. Titov certainly does not mention that Lemuria continues to operate to this day.[5] Thus, Titov never stopped doing business in Florida, and continues to engage in substantial business activity in Florida.

## ARGUMENT

The affidavit accompanying this Response—coupled with Judge Williams's findings of fact and law in the Disney Action and the facts admitted in Titov's own declarations—conclusively demonstrate that this Court has personal jurisdiction over Titov.

---

[5] According to Florida's Division of Corporations, Lemuria is currently an active corporation and Anton Titov remains its only listed officer or director. *See* Mustico Decl. ¶ 3 & Ex. 1. Lemuria's principal and only office is in Fort Lauderdale, Florida. *See* Mustico Decl. ¶ 6; Decl. of Anton Titov, *Perfect 10,* ECF No. 12-1 ¶ 3, Mustico Decl. Ex. 11. Lemuria even filed its 2014 annual report with the State of Florida. *Id*. Ex. 2. Its registered agent is an entity associated with Constantin Luchian, who was also Hotfile's DMCA agent. *Id*. ¶ 5. Lemuria currently serves as the ISP for the website, www.pcloud.com, which is Titov's successor venture to Hotfile. *See id*. ¶ 8. In fact, that entity, pCloud.com, also engages in the reproduction, storage, and distribution of user files. *See id*. ¶ 9. Titov identifies himself as CTO of pCloud on his LinkedIn page, (*id*.), thus having the same role, among others, he had at Hotfile. Incidentally, pCloud's DMCA agent is the same DMCA agent Titov appointed for Hotfile – Constantin Luchian in Fort Lauderdale, Florida. *See id*.

I.       **STANDARD OF REVIEW AND COLLATERAL ESTOPPEL**

A plaintiff must allege a *prima facie* case of personal jurisdiction.  *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1351 (11th Cir. 2013).  "[T]he plaintiffs' factual allegations are accepted as true, unless those allegations are contested by a defendant's affidavit."  *R&R Games, Inc. v. Fundex Games, Ltd.*, 2013 WL 3729309, 2013 U.S. Dist. LEXIS 97621, at *5 (M.D. Fla. July 12, 2013) (citing *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990)).  The burden is then on the defendant to submit an affidavit that "must contain specific factual declarations within the affiant's personal knowledge" that rebut personal jurisdiction. *Mosseri,* 736 F.3d at 1351; *see also Kitroser v. Hurt*, 85 So. 3d 1084, 1087 (Fla. 2012).  "If a defendant fully refutes the jurisdictional allegations, then the burden shifts back to the plaintiff to prove the basis for jurisdiction."  *Kitroser*, 85 So. 3d at 1087.  If jurisdiction is contested, "all reasonable inferences are drawn in favor of the plaintiff."  *R&R Games*, 2013 U.S. Dist. LEXIS 97621, at *5.  That is because in reviewing a motion to dismiss for lack of personal jurisdiction, a court should not dismiss the plaintiff's claims "unless it appears beyond doubt that the plaintiff can prove no set of facts that would establish personal jurisdiction over the defendants." *Moltz v. Seneca Balance, Inc.,* 606 F. Supp. 612, 614 (S.D. Fla. 1985) (citing *McKinnis v. Mosely,* 693 F.2d 1054, 1058 (11th Cir. 1982)).

Titov has not and cannot meet the burden of showing that it is beyond doubt that plaintiffs can prove no set of facts to establish personal jurisdiction.  To be sure, Titov's limited and conclusory statements in his declaration are not adequate to shift the burden back to Plaintiffs.  *See Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1215 (11th Cir. 1999) (holding that defendant's affidavit's "conclusory assertions of ultimate fact are insufficient to shift to the [p]laintiffs the burden of producing evidence supporting jurisdiction").  But, even if Titov were to have shifted the burden, Plaintiffs have rebutted his affidavit with sworn evidence and the Disney Order, all of which demonstrate a basis for personal jurisdiction.

Before delving into the analysis, it is important to recognize the impact of the Disney Order. Because this case is based on the very same conduct and theories of law alleged in the Disney Action, Judge Williams's findings of fact as to Defendants' infringing conduct and the resulting finding of liability for infringement occurring on the Hotfile network must be adopted here. Whether referred to as "collateral estoppel," or "issue preclusion," the doctrine "bars 'successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment,' even if the issue recurs in the context of a different claim." *Miller's Ale House, Inc. v. Boynton Carolina Ale House, LLC*, 702 F.3d 1312, 1318 (11th Cir. 2012) (quoting *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008)). Issue preclusion can be used "offensively" to "foreclose [a] defendant from litigating an issue the defendant has previously litigated unsuccessfully in an action with another party." *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n.4 (1979); *see also In re Air Crash near Rio Grande P.R. on Dec. 3, 2008,* No. 11-md-02246-KAM, 2012 WL 113774, 2012 U.S. Dist. LEXIS 4568, at *10 (S.D. Fla. Jan. 13, 2012). Accordingly, Judge Williams's Disney Order has collateral estoppel effect and Defendants are precluded from re-litigating the same issues—factual or legal—in the finding of vicarious infringement against Hotfile Corp. and Titov in the Disney Action.

## II.  FLORIDA'S LONG-ARM STATUTE

### A.  <u>Titov is Subject to this Court's General Jurisdiction</u>

Under Florida's long-arm statute the Court has general personal jurisdiction over a defendant "who is engaged in substantial and not isolated activity within this state, whether such activity is wholly interstate, intrastate, or otherwise … whether or not the claim arises from that activity." Fla. Stat. § 48.193(2). "'Substantial and not isolated activity' means that the 'necessary minimum contacts between the [defendant] and the state … must be 'continuous and systematic.''" *KVAR Energy Sav., Inc. v. Tri-State Energy Solutions, LLP*, No. 6:08-cv-85-Orl-19KRS, 2009 WL 103645, 2009 U.S. Dist. LEXIS 3007, at *12 (M.D. Fla. Jan. 15, 2009)

(quoting *Abramson v. Walt Disney Co.*, 132 F. App'x 273, 275 (11th Cir. 2005)). "In making a determination as to general jurisdiction, a court should consider a defendant's contacts collectively over the relevant period of years prior to the filing of a complaint." *Id.* (internal quotations and citations omitted).

Based on Titov's continuous and systematic contacts with Florida described above, Titov is subject to general jurisdiction in this forum. Without repeating all of Titov's relevant contacts again here, this includes: Titov's continuous operation, as sole owner, manager and director, of Lemuria, a Florida corporation with its principal place of business in Florida; Titov's operation of Lemuria and Hotfile while physically present in Florida; his continuous appointment and use—now on behalf of his current business venture and Hotfile before that—of an agent in Florida; and his numerous trips to Florida.

Titov argues the corporate shield doctrine insulates him from liability based on his company's activities. Mot. 7-8. As discussed in more detail below, the corporate shield doctrine does not apply here.

Titov argues that, aside from the corporate shield doctrine, formation of a Florida corporation, or indeed any action taken on behalf of the corporation, does not subject its principal to personal jurisdiction in Florida. *See id.* However, as demonstrated above, Plaintiffs allege and have shown a much more substantial connection to Florida than "mere formation" of a corporation in Florida. Lemuria, Titov's company, is located in and actively engages in business in Florida to this day, and Titov has traveled to Florida to engage in Lemuria's business on numerous occasions.

Moreover, the cases Titov cites are inapposite. In *Beasley v. Diamond R. Fertilizer, Co.*, the individual defendant formed a corporation in Florida that never carried on any business and was dissolved prior to the suit. 710 So. 2d 1025 (Fla. Dist. Ct. App. 1998). In *Suroor v. First Inv. Corp.*, the corporation was not a Florida corporation and did not have any offices in Florida.

700 So. 2d 139 (Fla. Dist. Ct. App. 1997). In addition, these cases do not involve copyright infringement. In the context of copyright infringement, a corporate officer's liability depends on his financial interest in the corporation, the extent of his right and ability to supervise infringing activity, and his personal participation in the infringing activity. *See* Disney Order, 2013 U.S. Dist. LEXIS, at *134-41. Titov was found individually liable as an active participant in the conduct for which Hotfile is liable. *Id.* ("Titov has personally had a hand in every aspect of the conduct underpinning the [plaintiffs'] theories of liability in this case."). Thus, personal jurisdiction over Titov is not based on his mere formation of a corporation, or his activity for the corporation's benefit alone, as he insinuates. Neither of the cases Titov cites lend him support.

### B.    Titov is Also Subject to this Court's Specific Jurisdiction

Florida's long-arm statute provides for specific personal jurisdiction over a person, whether or not a citizen or resident of Florida, for causes of action arising from or related to certain acts committed in Florida. Fla. Stat. § 48.193(1)(a); *see also Mosseri*, 736 F.3d at 1352; *Licciardello v. Lovelady*, 544 F.3d 1280, 1283 (11th Cir. 2008). In particular, specific jurisdiction is authorized where the cause of action alleged arises out of a defendant's commission of a tort in Florida, Fla. Stat. § 48.193(1)(a)(2), or a defendant's operation of a business or business venture in Florida, Fla. Stat. § 48.193(1)(a)(1). Both apply here.

### 1.    Titov Committed a Tort in Florida.

Copyright infringement is a tort. *See Cable/Home Commc'n Corp. v. Network Prods., Inc.*, 902 F.2d 829, 856-57 (11th Cir. 1990) (holding "tortious acts" provision of Florida's long-arm statute authorized personal jurisdiction over defendants based on copyright infringement); *R&R Games,* 2013 U.S. Dist. LEXIS 97621, at *14 (holding secondary copyright infringement claims fell within exception to corporate shield doctrine for intentional torts); *cf. Mosseri*, 736 F.3d at 1353 (holding that "trademark claims allege 'tortious acts' for purposes of Florida's long-

10

arm statute").

Titov committed tortious conduct in Florida.[6]  "A nonresident defendant commits 'a tortious act within [Florida]' when he commits an act outside the state that causes injury within Florida."  *Mosseri*, 736 F.3d at 1353 (citing *Lovelady*, 544 F.3d at 1283).  In *Licciardello v. Lovelady*, the Eleventh Circuit held that under the "tortious acts" provision in § 48.193(1)(a)(2),[7] the infringement, which occurred on an Internet website, "clearly also occurred in Florida by virtue of the website's accessibility in Florida."  544 F.3d at 1283; *see also Foreign Imported Prods. & Publ., Inc. v. Grupo Indus. Hotelero, S.A.*, No. 07—22066-CIV-GOLD/MCALILEY, 2008 WL 4724495, 2008 U.S. Dist. LEXIS 108705, at *18 (S.D. Fla. Oct. 24, 2008) ("If copyright infringement occurs on a website that is accessible in Florida, § 48.193(1)[(a)(2)] is met even if the website was created outside of Florida.").  The Eleventh Circuit reasoned that it "need not decide whether trademark injury necessarily occurs where the owner of the mark resides" because the tort of trademark infringement caused injury and thus "occurred in Florida by virtue of the website's accessibility in Florida."  *Lovelady*, 544 F.3d at 1283; *see also Mosseri*, 736 F.3d at 1354 (same).

Thus, based just on Hotfile's accessibility in Florida and Titov's individual liability for the infringement, the allegations here are sufficient to trigger the Court's jurisdiction over Titov

---

[6] Titov argues that Plaintiffs must allege that tortious conduct occurred between January 17, 2011 and February 8, 2011.  Mot. 2-3, 9.  He argues that conduct predating January 17, 2011 occurred prior to the statute of limitations, and that Judge Williams limited her ruling to the period predating February 8, 2011, after which Hotfile and Titov may theoretically be entitled to the DMCA safe harbor.  *See id.*  This argument fails on both sides of the timeline. Titov points to no authority to support the argument that conduct that predated the statute of limitations but results in infringement within the statutory period is insulated from liability.  Indeed, the statutory limitation does not look at the totality of the conduct, but rather when the claim accrues.  In this case, the infringement claims accrued within the three-year statutory period.  Were it otherwise, the statute of limitations would begin running before a plaintiff was injured or even knew or had reason to know of the infringement.  Titov's misguided argument is akin to a products liability defendant arguing that the statute of limitations runs from the date a defective product was manufactured as opposed to the plaintiff's injury.  His argument also fails on the other side of the timeline because Titov has not established that Hotfile is entitled to the benefit of a DMCA safe harbor as of February 8, 2011.

[7] In 2013, the Florida legislature moved the tortious acts provision to its present location at § 48.193(1)(a)(2) but did not alter the language of the provision in any way.  *See Mosseri*, 736 F.3d at 1353 n.7 (noting that *Lovelady* construed a previous but identical version of the long-arm statute at Fla. Stat. § 48.193(1)(b)).

under § 48.193(1)(a)(2).  Like the situation in *Mosseri*, however, there are also additional tortious acts and injury within Florida.  *See Mosseri*, 736 F.3d at 1354 ("Although *Lovelady* relied on the website's *accessibility* in Florida for its long-arm statue analysis solely, this case involves other tortious acts within Florida.").

First, the situs of the injury also occurred in Florida.  Plaintiffs allege—and Titov does not dispute—that Hotfile's users uploaded and downloaded infringing copies of Plaintiffs' works in Florida.  Compl. ¶ 21; *see Axel Braun Prods. v. Doe*, No. 11-56 (EGS/JMF), 2012 WL 177856, 2012 U.S. Dist. LEXIS 6967, at *4-5, 7-8 (D.D.C. Jan. 19, 2012) (noting situs of the injury is where the copyright infringement, i.e., the uploading and downloading of the copyrighted material, took place).  Some of the largest and most respected universities, along with countless other educational institutions, are located in Florida.  Plaintiffs are five of the largest textbook publishing companies in the United States.  Compl. ¶ 1.  As a result of Titov's and Hotfile's vicarious infringement, Plaintiffs necessarily lost sales and were injured in Florida. *See* Mustico Decl. ¶ 2; *see also Mosseri*, 736 F.3d at 1354 (holding that tortious acts caused injury in Florida because "infringing goods were not only accessible on the website, but were sold to Florida customers through that website"); *cf. Arch Aluminum & Glass Co. v. Haney,* 964 So. 2d 228, 234 (Fla. Dist. Ct. App. 2007) (rejecting notion that the situs of an injury to a corporation must *necessarily* occur at its place of incorporation, and finding that no tort occurred in Florida because any lost clients and revenue occurred in western states, not Florida).

Second, personal jurisdiction attaches under the "tortious activity" provision of the Florida long-arm statute if the plaintiff alleges that the non-resident defendant "committed a substantial aspect of the alleged tort in Florida" by establishing that the activities in Florida were "essential to the success of the tort."  *Cable/Home Commc'n*, 902 F.2d at 857.  Here, as mentioned above, Titov operates Lemuria—a Florida corporation and one of the "mechanisms necessary" for Hotfile to operate and the infringement to occur.  *See supra* at 7.  Moreover,

Titov, a central figure at both Hotfile and Lemuria, operated these businesses while physically present in Florida. *See id.* By failing to stop or limit the infringement occurring via Hotfile's website while physically present during his numerous trips and stays in Florida, Titov committed a tort in Florida. Thus, this provision is satisfied on multiple grounds.

### 2. Specific Jurisdiction Is Present Because Titov Engaged in the Business of Hotfile and Its Related Entity Lemuria Communication, Inc. in Florida.

Titov's operation of Lemuria and Hotfile in Florida, as described above, also subjects him to personal jurisdiction under § 48.193(1)(a)(1) of Florida's long-arm statute. Under that section, a defendant is subject to specific personal jurisdiction if the claim against him arises from the defendant "operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state." Fla. Stat. § 48.193(1)(a)(1). Clearly Titov has operated Lemuria in Florida as he, himself, claims in sworn testimony. Titov Decl. ¶ 8; Disney Action, ECF No. 317 ¶ 16 (citing Titov deposition), Mustico Decl. Ex. 10. Given Titov's central role at Hotfile, Titov necessarily operated Hotfile while physically present in Florida. Moreover, Titov operated Lemuria to provide internet connectivity and store infringing files for Hotfile. *See* Disney Action, ECF No. 317 ¶ 16, Mustico Decl. Ex. 10; 2013 U.S. Dist. LEXIS 172339, at *142. Plaintiffs' vicarious copyright infringement claim arises directly out of this business activity.

In arguing that his activity does not rise to the level of "engaging in" a business in Florida, Titov cites cases where the defendant-corporations were not Florida corporations, had no offices—let alone principal offices—in Florida, and conducted all of their business outside of Florida. *See, e.g., Horizon Aggressive Growth, L.P. v. Rothstein-Kass, P.A.*, 421 F.3d 1162, 1167 (11th Cir. 2005); *see also* Mot. 12-13. The allegations in those cases concerned telephonic and electronic communications into Florida. *See id.* In contrast, Plaintiffs' allegations against Titov include his and his businesses' continuous presence and activity in Florida.

### C.  **The Corporate Shield Doctrine Does Not Apply Here**

Titov argues that any actions he took "on behalf of either Lemuria or Hotfile" do not subject him to personal jurisdiction under the corporate shield doctrine.  Mot. 7, 10, 12.  However, Titov's actions do not qualify for any such immunity.

"The 'corporate shield' doctrine … provides that acts performed by a person exclusively in his corporate capacity not in Florida but *in a foreign state* may not form the predicate for the exercise of personal jurisdiction over the employee in the forum state."  *Kitroser*, 85 So. 3d at 1088.  "The rationale behind the corporate shield doctrine is that it may be unfair to force an individual to defend an action filed against him personally in a forum with which his only relevant contacts are acts performed totally outside the forum state and not for his own benefit but for the exclusive benefit of his employer."  *Id.* at 1088.  "Notwithstanding the corporate shield doctrine, a corporate officer who commits intentional misconduct may be subject to personal jurisdiction."  *Minsurg Int'l, Inc. v. Frontier Devices, Inc.*, No. 8:10-cv-1589-T-33EAJ, 2011 U.S. Dist. LEXIS 37967, at *9 (M.D. Fla. Apr. 7, 2011) (holding that corporate shield doctrine did not preclude personal jurisdiction over corporate officer in patent infringement case); *see also Byron v. Marine Carriers (USA)*, 668 So. 2d 273 (Fla. Dist. Ct. App. 1996) (holding that because the complaint alleged an intentional tort the corporate shield doctrine did not apply).

Here, Plaintiffs have alleged that Titov's vicarious copyright infringement was "intentional and knowing, constituting willful copyright infringement under the Copyright Act, 17 U.S.C. § 504."  Compl. ¶ 44.  As discussed above, copyright infringement falls within the exception for intentional torts, which Plaintiffs allege Titov committed in Florida.  *See Cable/Home Commc'n,* 902 f.2d at 856-57; *R&R Games*, 2013 U.S. Dist. LEXIS 97621, at *13-14 (holding that the corporate shield doctrine did not apply because corporate officer was alleged to have induced and contributed to copyright infringement).  In addition, Plaintiffs allege that

Titov conducted many essential acts of the infringement while physically present in Florida. *See supra* at 6-7. Of course, Titov also performed these acts for his own benefit, not just for that of Hotfile. Accordingly, the corporate shield doctrine has no application to this case.

## III.   DUE PROCESS

Once a court is satisfied that Florida's long-arm statute permits jurisdiction over a defendant, a court must also determine whether the defendant has established "minimum contacts" with the forum and whether the exercise of personal jurisdiction over him "comports with traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington,* 326 U.S. 310 (1945). The plaintiff bears the burden of establishing the first prong, and if the plaintiff does so, "a defendant must make a 'compelling case' that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice." *Mosseri*, 736 F.3d at 1355 (internal quotations and citation omitted). As discussed below, due process is satisfied.[8]

### A.   <u>Minimum Contacts Exist Between Titov and Florida to Satisfy Due Process</u>

There is a three-part test for minimum contacts in the Eleventh Circuit. "First, the contacts must be related to the plaintiff's cause of action. Second, the contacts must involve some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum, and third, the defendant should reasonably anticipate being haled into court there." *Grupo Indus.*, 2008 U.S. Dist. LEXIS 108705, at *21-22 (citing *Posner*, 178 F.3d at 1220)).

The first requirement for minimum contacts is easily satisfied. Plaintiffs' copyright infringement claims relate to Titov's contacts with Florida. Titov was responsible for the operation of Hotfile, such that Judge Williams found him personally liable for the infringement

---

[8] "[I]f the burden is met under Florida's general jurisdiction statute, the constitutional due process burden is necessarily also met" because Florida courts have harmonized § 48.193(2) with the due process requirements. *KVAR Energy*, 2009 U.S. Dist. LEXIS, at *13 (quoting *Carib-USA Ship Lines Bahamas Ltd. v. Dorsett*, 935 So. 2d 1272, 1275 (Fla. Dist. Ct. App. 2006)). Thus, the due process analysis is only relevant as to the assertion of specific jurisdiction.

occurring via the Hotfile site. Disney Order, 2013 U.S. Dist. LEXIS 172339, at *144. As a result of Titov's individual conduct, Hotfile, a fully interactive website accessible in Florida, allowed its users to upload and download infringing copies of Plaintiffs' works in Florida. *See* Disney Order, 2013 U.S. Dist. LEXIS 172339, at * 6-11; Compl. ¶ 21. In addition, Titov incorporated and singularly ran Hotfile's ISP affiliate, Lemuria, in Florida for the purpose of sustaining Hotfile's business and the infringement occurring on its network. 2013 U.S. Dist. LEXIS 172339, at *144. Thus, there is a direct causal relationship between Titov, Florida, and Plaintiffs' copyright infringement claims.

The second requirement in the due process analysis is also met here for two reasons. First, Titov operated an interactive, commercial website accessible to users in Florida. *See* Compl. ¶21; Mot. 17. Second, Titov made deliberate contact with Florida in the operation of that website. *See supra* 6-7.

Many courts in Florida have addressed purposeful availment based on a website's contacts with Florida using the sliding scale analysis first articulated in *Zippo Mgf. Co. v. Zippo Dot Com*, 952 F. Supp. 1119 (W.D. Pa. 1997). *See Grupo Indus.*, 2008 U.S. Dist. LEXIS 108705, at *23-28. Pertinent here is the so-called "middle ground," "occupied by interactive Web sites where a user can exchange information with the host computer. In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site." *Id.* at *26 (analyzing Defendants' website contacts, as well as other contacts, with Florida (quoting *Zippo*, 952 F. Supp. at 1124)). Titov admits that the "Hotfile website was both commercial and interactive," as he must. Mot. 17.

Instead, Titov argues that he and Hotfile have not directed their activities at this forum. Mot. 15-20. However, the authorities Titov cites involve either passive websites or defendants with little or no contact outside of the website's accessibility in Florida. *See Verizon Trademark*

*Servs., LLC v. Producers, Inc.*, 810 F. Supp. 2d 1321, 1333 (M.D. Fla. 2011) (holding passive internet activity did not establish minimum contacts even under *Zippo*); *Roblor Mktg. Group v. GPS Indus., Inc.*, 645 F. Supp. 2d 1130 (S.D. Fla. 2009) (finding website to be passive and no other forum-related contacts); *Zamora Radio, LLC v. Last.fm, Ltd.*, No. 09-20940-CIV-TORRES, 2011 WL 2580401, 2011 U.S. Dist. LEXIS 69101, at *21-30 (S.D. Fla. June 28, 2011) (finding no personal jurisdiction where website had low level of interactivity and no other forum-related activity); *Instabook Corp. v. Instantpublisher.com*, 469 F. Supp. 2d 1120, 1127 (M.D. Fla. 2006) (interactive website plus allegations of two sales to Florida residents, along with agreement to litigate in Tennessee did not support jurisdiction).  Titov analogizes Hotfile's relationship with Lemuria to that of an individual or business with a "ubiquitous internet service" such as a domain name registrar.  Mot. 16.  Titov's analogy fails to appreciate that the services Lemuria provided to Hotfile, under Titov's sole management, were the product of an incestuous transaction, rather than one at arms-length.  It is not comparable to utilizing the ubiquitous services of an unaffiliated third party.[9]

Even were the Court to apply a "website plus" test as some courts in the Eleventh Circuit do, *see Grupo Indus.*, 2008 U.S. Dist. LEXIS 108705, at *30, there are numerous additional contacts present here to satisfy due process.  Titov chose to create and manage Lemuria as a Florida corporation.  Disney Action, ECF No. 317 ¶ 13, Mustico Decl. Ex. 10.  He did so, as "sole owner, manager and director" of Lemuria, to maintain Hotfile's connection to its users and to provide the servers on which its users' infringing files were stored.  *See id.*; Disney Order, 2013 U.S. Dist. LEXIS 172339, at *142.  Titov traveled to Florida up to ten times, living in Florida during the summer of 2010, all "to perform work on behalf of Lemuria."  *See* Disney

---

[9] The parallel between Titov's contacts with Florida and that of "[l]awyers, journalists, teachers, physicians, courts, universities, and business people" who "conduct various types of computer-assisted research over telephone lines linked to supplier databases in other states" is equally preposterous.  *See*  Mot. 17 (quoting *Pres-Kap v. System One, Direct Access, Inc.*, 636 So. 2d 1351, 1353 (Fla. Dist. Ct. App. 1994)).

Action, ECF No. 317 ¶ 16-17, Mustico Decl. Ex. 10.  Titov also appointed and interacted with

Hotfile's DMCA agent who is located in Florida.  *See* 2013 U.S. Dist. LEXIS 172339, at *46-47,

*143; Mustico Decl. ¶ 6.  Thus, Titov personally directed all communications with Hotfile

regarding infringement to its agent in Florida.  *See Am. Int'l Airways v. Kitty Hawk Group*, 834

F. Supp. 222, 226 (E.D. Mich. 1993) ("By engaging in joint undertaking with a [resident]

corporation for the rendering of services which originated in [the forum, the individual

defendant] reached out beyond his resident state … to create a continuing relationship with

plaintiffs, citizens of [the forum].").  In addition, Titov's operation of Hotfile, which was

accessible in Florida, supports the exercise of jurisdiction over him in this forum.  *See Mosseri*,

736 F.3d at 1358 (holding that operation of an interactive website accessible in Florida supported

finding of purposeful availment).

     The totality of Titov's actions, including establishing and operating Lemuria in Florida,

appointing a DMCA agent in Florida, and his critical role running Hotfile's fully interactive

website that was accessible in Florida, elevate his "contacts with Florida from foreseeable to

deliberate."  *Grupo Indus.*, 2008 U.S. Dist. LEXIS 108705, at *34-35 & n.11 ("Defendants

ignore their non-website contacts with Florida, which render their connection to and availment of

Florida greater than other forums.").  This is more than enough for Titov to reasonably anticipate

being haled into court in Florida.

     **B.**    **The Exercise of Personal Jurisdiction Over Titov Comports with Traditional Notions of Fair Play and Substantial Justice.**

     After Plaintiffs have satisfied the first prong of the due process test, the burden shifts to

Defendant to show a "compelling case" that jurisdiction here would be unreasonable.  Although

Titov fails to carry the burden of proof on this issue, Plaintiffs address the reasonableness of the

Court's exercise of jurisdiction.

     In considering whether the exercise of personal jurisdiction comports with fair play and

substantial justice, courts in the Eleventh Circuit consider:  (1) "the burden on the defendant"; (2)

"the forum's interest in adjudicating the dispute"; (3) "the plaintiff's interest in obtaining

convenient and effective relief"; and (4) "the judicial system's interest in resolving the dispute."

*Lovelady*, 544 F.3d at 1288.  Titov has not offered any evidence, or even argument, as to how he

would be burdened by having to litigate the case in Florida.  Titov waived personal jurisdiction

in the Disney Action, even appearing for oral argument.  Disney Order, 2013 U.S. Dist. LEXIS

172339, at *145-46.  Titov also has traveled to Florida, and specifically Miami, many times.  *See*

Disney Action, ECF No. 317 ¶ 16-17, Mustico Decl. Ex. 10.  He even lived in Miami for a time.

Disney Action, ECF N0. 30-1 ¶ 4, Mustico Decl. Ex. 9.  Titov is perfectly capable of litigating in

this District.  It also bears noting that given Titov's apparent "residence" in Bulgaria any burden

he purports to suffer will be present regardless of where in the United States this case is litigated.

Moreover, in light of Titov's use of a Florida corporation and agent to support and sustain

his infringing activities, Florida has a strong interest in hearing this case.  Likewise, Florida has

an interest in protecting copyright owners that do substantial business selling their copyrighted

works in Florida.  *See* Mustico Decl. ¶ 2.  Plaintiffs, a diverse group of publishers, have an

interest in litigating here, their chosen forum.  Finally, both the judiciary and Plaintiffs have a

legitimate and substantial interest in efficiently resolving this dispute in the forum where a

related and nearly identical case was litigated, where an extensive record was established, and

where findings of fact and law directly applicable here have already been made.  Accordingly,

this Court may exercise personal jurisdiction over Defendant Titov.

## IV.   IN THE ALTERNATIVE, JURISDICTIONAL DISCOVERY IS WARRANTED

If the Court is not satisfied with the evidence presented, Plaintiffs respectfully request

that they be permitted to conduct jurisdictional discovery.  *Farrell v. Royal Caribbean Cruises,*

*Ltd.*, 917 F. Supp. 2d 1248, 1252 (S.D. Fla. 2013) ("Plaintiffs have a qualified right to

jurisdictional discovery when a court's jurisdiction is genuinely in dispute." (citing *Eaton v.*

*Dorchester Dev., Inc.*, 692 F.2d 727, 730 n.7 (11th Cir. 1982))).  While Plaintiffs submit that jurisdiction is proper based on Titov's contacts presented herein, such contacts were gleaned from Judge Williams's Disney Order in the Disney Action and Titov's own declarations in this case and prior actions. Titov's declaration does not address a number of issues, such as, by way of example:  the number and length of his visits to Florida, either for personal or business reasons; the extent of his work on behalf of Lemuria (and Hotfile) in Florida; and the quantum of Hotfile's affiliate and premium members in Florida.  Short of discovery, Plaintiffs have no way of determining the full extent of Titov's contacts with Florida, or the United States more generally.

Discovery regarding Titov's contacts with the United States, as a whole, would be appropriate because, even if Titov is not subject to jurisdiction based on his Florida contacts, Titov would still be subject to this Court's jurisdiction under Rule 4(k)(2).  *See Grupo Indus.*, 2008 U.S. Dist. LEXIS 108705, at *38-44 (noting that Rule 4(k)(2) permits it to exercise personal jurisdiction over a foreign defendant for claims arising under federal law where the defendant has sufficient nationwide contacts, but not sufficient contacts to satisfy the long-arm statute of any particular state).

## **<u>CONCLUSION</u>**

For the foregoing reasons, this Court should deny Defendant Titov's Motion to Dismiss for Lack of Personal Jurisdiction.

Dated:  September 8, 2014                Respectfully submitted,

                                        */s/ Karen L. Stetson*
                                        Karen L. Stetson

                                        GRAY-ROBINSON, P.A.
                                        Karen L. Stetson (FL Bar No. 742937)
                                        1221 Brickell Avenue, Suite 1600
                                        Miami, FL 33131
                                        Tel: 305-416-6880
                                        Fax: 305-416-6887
                                        karen.stetson@gray-robinson.com

                                        OPPENHEIM + ZEBRAK, LLP
                                        Matthew J. Oppenheim (admitted *pro hac vice*)
                                        Kerry M. Mustico (admitted *pro hac vice*)
                                        4400 Jenifer Street, NW, Suite 250
                                        Washington, DC 20015
                                        Tel:  202-621-9027
                                        matt@oandzlaw.com
                                        kerry@oandzlaw.com


                                        *Attorneys for Plaintiffs*


## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served electronically via the CM/ECF electronic filing system on all counsel and parties of record on this 8th day of September, 2014.


                                        */s/ Karen L. Stetson*
                                        Karen L. Stetson

21