**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No.: 14-20200-CIV-BLOOM/VALLE**

PEARSON EDUCATION, INC.,
ELSEVIER, INC.,
CENGAGE LEARNING, INC.,
JOHN WILEY & SONS, INC., and
MCGRAW-HILL GLOBAL EDUCATION
HOLDINGS, LLC,

    Plaintiffs,

v.

HOTFILE CORP. and
ANTON TITOV,

    Defendants.

**DEFENDANT ANTON TITOV'S REPLY IN SUPPORT OF**
**MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

*"Everyone is entitled to his own opinion, but not his own facts."*
-- Senator Daniel Patrick Moynihan

## INTRODUCTION

In a brief remarkable primarily for its unabashed willingness to shade both fact and law, Plaintiffs assert that this Court has personal jurisdiction over defendant Anton Titov ("Mr. Titov"), a Russian citizen who resides in Bulgaria.  Plaintiffs base their opposition almost entirely on *dicta* contained in a summary judgment ruling issued in a different case, with different Plaintiffs, involving allegations which took place during a different period of time and facts which were no longer the operative facts by the time the Plaintiffs filed *their* Complaint.

It is understandable why the Plaintiffs would like to dress their Complaint in the clothes of others: their own garments are not nearly as appealing.  Unfortunately for the Plaintiffs, however, their Complaint must stand or fall on its own merits and, because the Complaint does not, and cannot, allege sufficient facts to justify the exercise of personal jurisdiction over Mr. Titov, consistent with the requirements of the United States Constitution, the Complaint must be dismissed as to Mr. Titov.  In further support of his Motion to Dismiss, Mr. Titov states as follows.

## FACTS

Mindful of the Court's admonition to avoid the re-argument of issues raised in a party's primary brief, Mr. Titov instead focuses only on those factual inaccuracies contained in the Plaintiffs' Opposition brief.

Despite Plaintiffs' insinuations to the contrary, Mr. Titov has never owned or operated the Hotfile.com website (the "Hotfile Website").  Titov Declaration in Support of Reply, filed concurrently herewith [hereinafter "Titov Decl."], ¶ 3.  The Hotfile Website was owned and operated by Defendant Hotfile Corp. ("Hotfile"), a Panamanian company of which Mr. Titov

1

was a minority, and indeed the smallest, shareholder.  *Id.*  Mr. Titov did not have the authority to make unilateral decisions affecting the important aspects of Hotfile or its business or operations. *Id.*, ¶ 4; *Disney Enterprises, Inc. v. Hotfile Corp.*, 2013 U.S. Dist. LEXIS 172339 (S.D. Fla. Aug. 28, 2013).

Mr. Titov's connections to Florida are also misstated.  Mr. Titov has not performed work in Florida in any continuous or systematic way.  *Id.*, ¶ 7.  He has only visited Florida only sporadically (approximately 5-7 times) and only for tourism reasons or to perform work on behalf of Lemuria.  *Id.*  The tourism reasons were primary, and the work for Lemuria was secondary.  *Id.*, ¶ 8.  Although he spent a portion of the summer of 2010 in Miami Beach, he was not living there even then.  *Id.*, ¶ 9.  He was there on a temporary basis and for the primary purpose of tourism.  *Id.*  His permanent residence continued to be in Bulgaria (where it had been for the past two decades) and where his family, his house and his car continued to be.  *Id.*  Since the *Disney* lawsuit was filed, Mr. Titov has visited Florida approximately twice, and only in connection with that lawsuit.  *Id.*, ¶ 10.

Moreover, Plaintiffs attempt to make much of Mr. Titov's connections with a non-party, Lemuria Communications, Inc. ("Lemuria"), which served as Hotfile's internet service provider ("ISP") when the Hotfile Website was operational.  However, Lemuria had no genuine connection to the alleged infringement on the Hotfile Website as it was not formed for any reason related thereto.  Titov Decl., ¶ 5.  The Hotfile Website commenced operations in February of 2009, using Webazilla as its ISP.  *Id.*  By May of 2009 it was dissatisfied with the services of Webazilla and by the next month it had already notified Webazilla that it would be switching providers.  *Id.*  It was *after* Hotfile had already communicated that it was going to terminate Webazilla's services that a subpoena to Webazilla was issued in August of 2009.  *Id.*  The

formation of Lemuria was unrelated to allegations of copyright infringement and the start of the transfer of services to Lemuria was started months before Webazilla received the subpoena regarding infringement. *Id.* In any case, Lemuria provides ISP services to parties other than Hotfile, whom it stopped providing services since the Hotfile Website was shut down in December of 2013. *Id.*, ¶ 11.

In any case, Lemuria is not an alter-ego of Mr. Titov. Lemuria has, at all times, maintained corporate formalities. *Id.*, ¶ 6. It has regularly filed all necessary corporate documents with the Florida Secretary of State, has appointed an agent for service of process, is adequately capitalized and maintains funds adequate to pay for its operations and meet obligations to creditors, and its financial accounts are separate from accounts for any other person or entity. *Id.* Mr. Titov has never used Lemuria's bank account or corporate funds for his personal use. *Id.*

Mr. Titov further did not "personally direct all communications with Hotfile regarding infringement" to Hotfile's DMCA agent Mr. Constantin Luchian. *Hotfile* made Mr. Luchian's contact information available on the Hotfile Website and through the United States Copyright office for parties to contact him directly without Mr. Titov or Hotfile's intervention. *Id.*, ¶ 12.

## ARGUMENTS

### I.    Plaintiffs' Reliance on Collateral Estoppel is Misplaced.

Although the Plaintiffs' Opposition relies almost entirely on the alleged collateral estoppel effect of a summary judgment decision issued by Judge Williams in *Disney v. Hotfile Corp., reported at* 2013 U.S. Dist. LEXIS 172339 (S.D. Fla. Aug. 28, 2013), the Plaintiffs have misunderstood both *when* collateral estoppel (or issue preclusion) applies and to what facts such estoppel or preclusion may apply.

Preliminarily, the Plaintiffs' Opposition is remarkably silent as to the law concerning when issue preclusion applies.  "Under federal law, for issue preclusion to apply, (1) the issue at stake must be identical to the one involved in the prior litigation; (2) the issue must have been actually litigated in the prior suit; (3) the determination of the issue in the prior litigation must have been a critical and necessary part of the judgment in that action; and (4) the party against whom the earlier decision is asserted must have had a full and fair opportunity to litigate the issue in the earlier proceeding."  *City of Dania Beach v. United States Army Corps of Eng'rs,* 2012 U.S. Dist. LEXIS 93458 (S.D. Fla. 2012) (internal citations and quotations omitted).  In the present case, the Plaintiffs' arguments for issue preclusion fail entirely.

First, despite the Plaintiffs' conclusory assumptions to the contrary, the issue at stake here (whether the Court has personal jurisdiction over Mr. Titov as of the date of the filing of the Plaintiffs' Complaint) is not identical to the one involved in the prior suit.  The Plaintiffs in the present case filed their action almost precisely three years after the action was filed in the *Disney* matter.  To the extent that the Court in *Disney* found that jurisdiction was proper over Mr. Titov in that case (and, as discussed below, it did so only in *dicta* as it held that Mr. Titov's counsel had waived the issue by failing to raise it in its first response to the complaint in that action), it would necessary have done so based on the facts as they existed in February of 2011, when the *Disney* complaint was filed.  Those facts were no longer the operative facts in 2014, when the Plaintiffs filed their complaint in this action.

"The passage of time may be a factor in a determination of whether a case involves an identical issue to one litigated previously.  But the passage of time between prior and subsequent litigation is not by itself dispositive of non-identical issues.  Rather, the passage of time may evoke change of circumstances which preclude the creation of an estoppel. . . .  A party need

4

only point to one material differentiating fact that would alter the legal inquiry here and thereby overcome the preclusive effect." *Miller's Ale House, Inc. v. Boynton Carolina Ale House, LLC,* 702 F.3d 1312, 1319 (11th Cir. 2012) (internal citations and quotation marks omitted).

As Mr. Titov's Declarations in the present case make clear, although his visits to Florida before 2012 were themselves sporadic and minimal, his visits since then have been almost nonexistent. *See* Titov Decl., ¶ 10.

In addition, although the Plaintiffs make much of the summary judgment findings in the *Disney* case that, before 2011, Hotfile's users frequently used the Hotfile website to post and share infringing materials, they ignore completely the evidence presented in that Case that, after 2011, Hotfile radically changed its website to combat such infringement.  For example, the Court wrote in the *Disney* decision:

> In addition to targeting repeat infringers' accounts, Hotfile makes much of other countermeasures it has put into place, largely after this litigation began. For instance, Titov stated that Hotfile's current practice is to remove individual files within 48 hours of receiving a notice, which he believes Hotfile does 95% of the time. (Titov Decl. ¶ 19 (DE 321-1).) The Studios do not dispute that since February 2011, Hotfile has adhered to this practice, although the Studios have submitted documents suggesting that in some instances, Hotfile might not have always done so.
> . . .
> Hotfile now actively polices files on its network, principally through advanced filtering technology. Video fingerprinting implemented in September 2011 is capable of identifying copyrighted content, which Hotfile claims to then block. (Titov Decl. ¶ 35 (DE 321-1).) Hotfile has also used so-called "hashing technology" (possibly since August 2009) to remove identical copies of files once one is found to be infringing. This is a revision of the "master file policy" — something sharply criticized by the Studios — in which Hotfile saved server space by maintaining only one copy of identical files uploaded by different users. Formerly, when Hotfile received a claim of infringement, it disabled any offending links but did not actually remove the file from the server, thus leaving it accessible for download with a different link. And finally, Hotfile is employing other video and audio filtering technology that identifies files with characteristics matching content registered by copyright owners, which Hotfile then blocks.

*Disney Opinion,* *38-40.

To the extent, then, that the Plaintiffs here claim that personal jurisdiction is proper over Mr. Titov because the Court in *Disney* found that (pre-2011), Hotfile's technology failed to sufficiently combat potential piracy by Hotfile's users, those facts changed significantly, precluding the application of issue preclusion in this case.

The Plaintiffs cannot meet either of the next two factors necessary to invoke issue preclusion, inasmuch as the question of personal jurisdiction over Mr. Titov was neither actually litigated, nor necessarily decided in the *Disney* case. Although Mr. Titov attempted to raise the question of personal jurisdiction at the Summary Judgment stage in *Disney,* the Court rejected his attempts to do so, holding that he had not raised the issue early enough in the litigation:

> Defendants contend that Titov — a Russian citizen who resides in Bulgaria — is not subject to personal jurisdiction in Florida. Titov has advanced this assertion at least twice in this case: as a defense in his Answer and by asking the Studios not to serve him while he attended mediation in this jurisdiction. However, Titov failed to address the issue in the motion to dismiss he filed on March 31, 2011 (DE 50), which challenged only whether the Complaint stated a claim for relief under Federal Rule of Civil Procedure 12(b)(6). Federal Rule of Civil Procedure 12(h) provides that a party waives certain defenses that could have been raised under Rule 12(b) — such as lack of personal jurisdiction — by failing to interpose them in the first pleading. Rule 12(h) is explicit, requires compliance, and means that Titov has procedurally waived the personal jurisdiction issue.

*Disney Opinion,* at *144-45.

This is, then, precisely the opposite of an issue actually litigated and necessarily decided. It is, to the contrary, an issue that the Court found had been waived and, as such, needed not be considered or addressed on the merits.[1] Accordingly, there can be no issue preclusion in the present case with respect to personal jurisdiction over Mr. Titov.

II.     Plaintiffs' Assertion of General Jurisdiction is Without Basis.

---

[1] Although undersigned counsel eventually took over the defense in the *Disney* case, they were not primary counsel at the time Motions to Dismiss were filed in that case.

To prove general jurisdiction over a foreign defendant, the Plaintiffs must show "continuous and systematic general business contacts . . . . The 'continuous and systematic business contacts' required to confer general jurisdiction must be 'extensive and pervasive, in that a significant portion of the defendant's business operations or revenue are derived from established commercial relations in the state.'" *Travelocity.com LP v. Pier 35 Events, Inc.,* 2014 U.S. Dist. LEXIS 90821, 16-17 (S.D. Fla. 2014) (internal citations and quotations omitted). The Plaintiffs' complaint contains no suggestion whatsoever that Mr. Titov received *any* revenue from business conducted in Florida, much less a significant portion. Nor does the Plaintiffs complaint suggest in any way that a significant portion of Mr. Titov's business operations were conducted in Florida. Instead, the Plaintiffs attempt to meet their burden by pointing to the fact that (1) Hotfile's DMCA agent was located in Florida, and (2) Mr. Titov was connected to non-party Lemuria Communications (which provided internet services to the Hotfile Website). Neither argument is sufficient to bring Mr. Titov within this Court's jurisdiction.

First, not to belabor the obvious, but Mr. Luchian was not *Mr. Titov's* agent, but rather he served as an agent for Hotfile for the limited purpose of receiving and forwarding to Hotfile DMCA takedown notices. Even if this were not the case, however, there is no allegation that any of Mr. Luchian's conduct forms the basis for the Plaintiffs' claims against Mr. Titov (or Hotfile, for that matter). In the absence of such an allegation, the Plaintiffs' argument fails as a matter of law. *See, e.g., Chipman, Ltd. v. Thomas B. Jeffery Co.,* 251 U.S. 373, 379 (1920) ("Unless a foreign corporation is engaged in business within the State, it is not brought within the State by the presence of its agents."); *Perkins v. Benguet Consolidated Mining Co.,* 342 U.S. 437 (1952) ("[I]t is the corporate activities of the defendant, not just the mere designation of a statutory agent, that is helpful in determining whether the court has personal jurisdiction over the

defendant."); *Consolidated Dev. Corp. v. Sherritt, Inc.,* 216 F.3d 1286, 1293 (11th Cir. 2000) ("Courts of appeals that have addressed this issue have rejected the argument that appointing a registered agent is sufficient to establish general personal jurisdiction over a corporation."); *Sofrar, S.A. v. Graham Engineering Corp.*, 35 F. Supp. 2d 919, 921 (S.D. Fla. 1999) (finding no general jurisdiction under Florida's long-arm statute, even though defendants appointed an agent for service of process and were registered to do business in the state); *Bankhead Enterprises, Inc. v. Norfolk & Western Railway Co.*, 642 F.2d 802, 805 (5th Cir. 1981); *Wenche Siemer v. Learjet Acquisition Corp.,* 966 F.2d 179, 183 (5th Cir. 1992); *Ratliff v. Cooper Laboratories, Inc.*, 444 F.2d 745, 748 (4th Cir. 1971).

Plaintiffs' allegations that Mr. Titov incorporated and helped operate non-party Lemuria Communications is also insufficient to establish general jurisdiction. *See Beasley v. Diamond R. Fertilizer, Co.*, 710 So. 2d 1025, 1026 (Fla. Dist. Ct. App. 1998) ("The mere formation of a corporation in Florida by a non-resident, and even the conduct of business by the corporation in Florida, do not subject the shareholder to the jurisdiction of Florida courts."); *Supreme Fuels Trading FZE v. Sargeant*, 2009 WL 5128504 (S.D. Fla. Dec. 18, 2009) ("Indeed, the only allegation in the complaint regarding AbuNaba'a's contacts with Florida is that Abu–Naba'a helped form and operate IOTC, a Florida corporation. Therefore, Supreme has failed to plead sufficient facts to support general jurisdiction."). Nor is Mr. Titov's position as a director or officer of Lemuria sufficient to subject him to general jurisdiction in Florida. *See Olson v. Robbie*, 141 So. 3d 636, 641 (Fla. Dist. Ct. App. 2014) (non-resident director who was not a resident for over forty years, owned no property in Florida and only travelled there irregularly to visit friends was not subject to general jurisdiction despite also filing annual reports in Florida, attending occasional board meetings in Florida and acting as a trustee of a defunct Florida trust);

*Doe v. Thompson*, 620 So.2d 1004, 1006 (Fla. 1993) ("While [a] Corporation, which operates business in Florida could be haled into court because of its minimum contacts, its chief executive officer is not by virtue of his position subject to personal jurisdiction.").

Plaintiffs' attempt to claim that Mr. Titov "resided" in Florida – denied by Mr. Titov in his declaration – also fails to support a finding of general jurisdiction. *See United Technologies Corp. v. Mazer,* 556 F.3d 1260, 1275 n.16 (11th Cir. 2009) ("Moreover, the factual allegations regarding Loetschert's temporary, less-than-two-month stay in Florida, which appears to have been personal in nature, unrelated to his work for APM, and, in any event, insufficient to support a claim that he was 'domiciled' in the state, as well as Loetschert's purported business conducted in Florida on behalf of APM, fall far short of amounting to either 'substantial and not isolated activity' or 'continuous and systematic general business contacts' by APM within Florida."); *Slaihem v. Sea Tow Bahamas Ltd.,* 148 F.Supp.2d 1343, 1350–51 (S.D. Fla. 2001) ("To establish that a defendant is engaged in substantial activity within the state, the activity must be more than 'incidental, almost entirely personal contacts with the state . . . .'" (citation omitted)); *Snyder v. McLeod,* 971 So.2d 166, 169 (Fla. 5th DCA 2007) ("A legal residence or 'domicile' is the place where a person has fixed an abode with the present intention of making it his or her permanent home." (citation omitted)).

III.   Certain of Plaintiffs' Arguments Concerning Specific Jurisdiction Are Purely Speculative.

Finally, Plaintiffs appear to hypothesize that – despite the fact that not a single of the Plaintiffs are themselves located in Florida – they must have suffered damages in the state because there are a lot of colleges and universities located within the state and, that being the

9

case, *someone* must have uploaded or downloaded their materials to Hotfile from Florida.[2]  Such speculation is not accepted as true for the purposes of a motion brought under Rule 12(b).  *See, e.g., Pesci v. Budz*, 2012 U.S. Dist. LEXIS 147303 (M.D. Fla. Oct. 12, 2012) ("[T]he vast majority of the allegations as to Defendant's involvement or motive are wholly conclusory and nothing more than speculation.  Such allegations need not be accepted as true . . . ."); *Jones v. Chugach Educ. Servs.*, 2012 U.S. Dist. LEXIS 12812 (M.D. Fla. Jan. 10, 2012) ("The 'plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'" (*quoting Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007))).  "Instead, the '[f]actual allegations must be enough to raise a right to relief above the speculative level.'"  *Twombly*, 550 U.S. at 555.

In the present case, the Plaintiffs have not identified a single file containing their copyrighted works which they alleged to have been uploaded from or downloaded to Florida.  Nor have they identified a single individual alleged to have uploaded or downloaded such files.  Instead, the Plaintiffs do nothing more than speculate that such files must exist.  It is simply not enough.

## **CONCLUSION**

For the reasons stated herein and in Mr. Titov's Memorandum in Support of Motion to Dismiss, the claims against Mr. Titov should be dismissed pursuant to Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction.

---

[2] Plaintiffs' Complaint is carefully wordsmithed on this front.  The Complaint does not actually allege that any uploads or downloads took place in Florida, but rather it simply states that Hotfile is "liable for the infringing acts of its users, which include the uploading and downloading of Plaintiffs' copyrighted works in Florida."  Complaint, ¶ 21.

**Respectfully submitted:**

/s/ Matthew Shayefar
Matthew Shayefar (# 685927 - *pro hac vice*)
Valentin D. Gurvits (# 643572 - *pro hac vice*)
BOSTON LAW GROUP, PC
825 Beacon Street, Suite 20
Newton Centre, MA  02459
Telephone: (617) 928-1806
Facsimile: (617) 928-1802
matt@bostonlawgroup.com
vgurvits@bostonlawgroup.com

/s/ Brady J. Cobb
Brady J. Cobb, Esquire
Florida Bar No. 031018
COBB EDDY MIJARES, PLLC
642 Northeast Third Avenue
Fort Lauderdale, Florida 33304
Telephone (954) 527-4111
Facsimile  (954) 900-5507
bcobb@cemlaw.net

/s/ Evan Fray-Witzer
Evan Fray-Witzer (# 564349 - *pro hac vice*)
CIAMPA FRAY-WITZER, LLP
20 Park Plaza, Suite 505
Boston, MA 02116
Telephone: (617) 426-0000
Facsimile: (617) 423-4855
Evan@CFWlegal.com

*Attorneys for Anton Titov*

Dated: September 22, 2014

## CERTIFICATE OF SERVICE

**I hereby certify** that a true and correct copy of the foregoing was served electronically via email on all counsel or parties of record on the service list below this 22nd day of September, 2014.

/s/ Matthew Shayefar
Matthew Shayefar

## SERVICE LIST

Karen L. Stetson
GRAY-ROBINSON, P.A.
1221 Brickell Avenue, Suite 1600
Miami, Florida 33131
Telephone: 305-416-6880
Facsimile: 305-416-6887
karen.stetson@gray-robinson.com

Matthew J. Oppenheim
Kerry M. Mustico
OPPENHEIM + ZEIBRAK, LLP
4400 Jenifer Street, NW, Suite 250
Washington, District of Columbia 20015
Telephone: 202-621-9027
matt@oandzlaw.com
kerry@oandzlaw.com