UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 14-20200-CIV-BLOOM/VALLE

PEARSON EDUCATION, INC., ELSEVIER, INC.,
CENGAGE LEARNING, INC., JOHN WILEY &
SONS, INC., AND MCGRAW-HILL GLOBAL
EDUCATION HOLDINGS, LLC,

    *Plaintiffs*,
v.

HOTFILE CORP. and ANTON TITOV,

    *Defendants*.
_____/

**PLAINTIFFS/COUNTER-DEFENDANTS' MOTION TO DISMISS
DEFENDANT ANTON TITOV'S COUNTERCLAIMS (COUNTS I-III) AND
MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**

Pearson Education, Inc., Elsevier, Inc., Cengage Learning, Inc., John Wiley & Sons, Inc., and McGraw-Hill Global Education Holdings, LLC ("Plaintiffs") respectfully move pursuant to Federal Rule of Civil Procedure 12(b) and Local Rule 7.1 for entry of an order dismissing Defendant Anton Titov's Counterclaims (Counts I-III), and in support state as follows:

**MOTION**

1. In this action for copyright infringement, Plaintiffs are five of the largest textbook publishing companies in the United States. Defendants are Hotfile Corp. and Anton Titov, who operated the website formerly located at www.hotfile.com (the "Hotfile Website"). The Hotfile Website, which was an online file "storage locker," was shut down in December 2013 following Judge Kathleen Williams's summary judgment decision in a

related case, *Disney Enters., Inc. et al. v. Hotfile Corp., et al.*, No. 1:11-cv-20427-CIV-KMW, 2013 WL 6336286, 2013 U.S. Dist. LEXIS 172339 (S.D. Fla. Aug. 28, 2013) (the "Disney Action"). In the Disney Action, Judge Williams found Defendants liable for vicarious copyright infringement based on conduct all-but identical to that alleged here. *See Disney*, 2013 U.S. Dist. LEXIS 172339, at *134-44. Thus, the Court has already adjudicated Defendants to be liable for their users' infringement of copyrighted works via the Hotfile Website.

2. In the Disney Action, Judge Williams found that as a matter of law Defendants were not entitled to the Digital Millennium Copyright Act's safe harbor, 17 U.S.C. § 512(c), for the infringing activity prior to February 18, 2011. *Id.* at *77, 158. At the same time, Judge Williams did not decide whether Hotfile was entitled to the DMCA safe harbor for the infringing activity that took place after February 18, 2011. *Id.* at * 79-81. Judge Williams determined that doing so would have amounted to issuing an advisory opinion. *Id.* at *80-81.

3. Based on Judge Williams's decision in the Disney Action, Plaintiffs filed this suit on January 17, 2014 seeking damages for the infringement of their copyrighted works on the Hotfile Website. In this case, Plaintiffs do not assert a claim for infringement based on infringing activity through the Hotfile Website after February 18, 2011.

4. On July 21, 2014, Defendant Hotfile filed its Answer and asserted seventeen affirmative defenses. Defendant Titov filed a motion to dismiss for lack of personal jurisdiction. The Court denied Titov's motion to dismiss on October 30, 2014, finding that Titov was subject to personal jurisdiction in Florida under Fla. Stat. § 48.193(1)(a)(1).

5. On November 24, 2014, Defendant Titov filed his Answer. In it, Titov asserted eighteen affirmative defenses and three counterclaims seeking declaratory relief. All of Titov's counterclaims are duplicative of his affirmative defenses.

6. Count I asserts a cause of action for a declaratory judgment that Hotfile was in full compliance with the DMCA as of February 18, 2011, and is thereafter entitled to the DMCA safe harbor covering claims for copyright infringement for infringing activity from that date forward. However, Count I fails to allege an actual controversy as required by both the federal Declaratory Judgment Act and Article III, section 2 of the United States Constitution, and should therefore be dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1).

7. Even if Count I presented an actual controversy, the Court should, in its discretion, decline to exercise jurisdiction because, to the extent not moot, it is duplicative of Titov's first affirmative defense, rendering declaratory judgment unnecessary. Moreover, Count I involves a complicated and uncertain area of law, with vast amounts of factual and technical issues requiring extensive discovery. As such, if allowed to stay, it would change the entire focus of this litigation and unnecessarily consume most of the parties' and the Court's time and resources. Accordingly, it should not be heard.

8. Likewise, Counts II and III, which seek declaratory judgment as to the applicability of the statute of limitations and the doctrine of laches, respectively, are redundant and will be wholly resolved by adjudication of Plaintiffs' claim and Defendants' affirmative defenses. As such, the claims for declaratory judgment serve no useful purpose, and should be dismissed.

## **MEMORANDUM OF LAW**

Because Titov's Counterclaims fail to allege an actual case or controversy and/or are duplicative and unnecessary, they should be dismissed with prejudice.

Plaintiffs allege that Defendants Hotfile and Titov—through their operation of the Hotfile Website—engaged on a massive scale in vicarious infringement of Plaintiffs' copyrighted textbooks and other educational materials. Compl. ¶¶ 1-7. Plaintiffs allege that Defendants encouraged their users to upload infringing copies of Plaintiffs' valuable, copyrighted educational content to Hotfile's computer servers and to promote those works for download by other users, including by providing Hotfile's users or "affiliates" with financial incentives to engage in such conduct. *Id.* ¶¶ 24-30. Defendants' model for generating revenue depended on their users uploading and promoting these infringing works. *Id.* Defendants were fully aware of the infringement to which they materially contributed. *Id.* ¶ 32. Moreover, Defendants obtained a financial benefit from infringement, *id.* ¶ 27, that they had the right and ability to control, but did not stop, *id.* ¶¶ 32-33. Plaintiffs allege that, as a result, Defendants are liable for vicarious copyright infringement.

In its Answer, Defendant Hotfile has alleged seventeen affirmative defenses, including that Plaintiffs' claims are barred by the statute of limitations and that Hotfile is entitled to the DMCA safe harbor. Hotfile did not assert any counterclaims. Now, following the Court's denial of his motion to dismiss for lack of personal jurisdiction, Defendant Titov asserts three counterclaims which are identical to three of his eighteen affirmative defenses.

Specifically, although the DMCA is already pled as an affirmative defense, Count I in Titov's Counterclaims seeks a declaratory judgment that as of February 18, 2011 Hotfile was entitled to the DMCA's safe harbor. *Compare* Titov's Counterclaims ¶¶ 37-49 *with* Titov's Affirmative Defenses ¶ 15 ("Defendants are entitled to the safe harbor of the [DMCA] and, as

4

such, the Complaint must fail in whole or in part."). Similarly, although the statute of limitations is already pled as an affirmative defense, Count II seeks a declaratory judgment that Plaintiffs' claims are barred by the statute of limitations. *Compare* Titov's Counterclaims ¶¶ 50-61 *with* Titov's Affirmative Defenses ¶ 1 ("The Complaint is barred, in whole or in part, by the statute of limitations."). And, Count III seeks a declaratory judgment that Plaintiffs' claims are barred by the doctrine of laches, even though it too is already pled as an affirmative defense. *Compare* Titov's Counterclaims ¶¶ 62-65 *with* Titov's Affirmative Defenses ¶ 2 ("The Complaint is barred, in whole or in part, by the doctrine of laches.").

Accordingly, as discussed below, Titov's Counterclaims should be dismissed with prejudice. Not only is each counterclaim duplicative and unnecessary, there is no actual case or controversy with respect to Count I.

## **ARGUMENT**

### I. TITOV'S DMCA SAFE HARBOR COUNTERCLAIM (COUNT I) FAILS TO ALLEGE AN ACTUAL CONTROVERSY AND MUST BE DISMISSED

Article III, section 2 of the United States Constitution limits the jurisdiction of federal courts to "cases" and "controversies." Similarly, the Declaratory Judgment Act permits federal courts to grant declaratory relief only if the party requesting such relief has alleged an "actual controversy." *See* 28 U.S.C. § 2201; *Odyssey Marine Exploration, Inc. v. Shipwrecked Vessel*, 512 Fed. Appx. 890, 895 (11th Cir. 2013) (per curiam). The standard for determining whether an actual controversy exists under the Declaratory Judgment Act is the same standard used to analyze Article III's case or controversy requirement. *Hendrix v. Poonai*, 662 F.2d 719, 721 (11th Cir. 1981) (citing *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 239-40 (1937)).

"The future injuries underlying a declaratory judgment claim must be 'immediate or

5

imminent' in character." *United States ex rel. BAC Funding Consortium, Inc. v. Westchester Fire Ins. Co.*, No. 13-22536-CIV-COHN/SELTZER, 2014 WL 186125, 2014 U.S. Dist. LEXIS 5736, at *18 (S.D. Fla. Jan. 16, 2014) (quoting *Odyssey Marine*, No. 06-1685, 2012 WL 3541988, 2012 U.S. Dist. LEXIS 115038, at *14 (M.D. Fla. Aug. 15, 2012), *aff'd,* 512 F. App'x 890 (11th Cir. 2013)). To the extent that a counterclaim seeks a declaration reaching beyond the claims in the action, "the counterclaim addresses only a threat of hypothetical injury," the adjudication of which "would constitute an impermissible advisory opinion." *Id.* at *18-19. Thus, to overcome a motion to dismiss, a claimant must allege a definite and concrete controversy affecting the legal relations of the parties. This requirement is not satisfied where the issues raised in the pleading are hypothetical, abstract, academic, or moot in nature. *See Odyssey Marine*, 512 Fed. Appx. at 895-96 (affirming dismissal of declaratory judgment claim and holding that the claim's "piling-on of contingencies" could not satisfy the requirements for an actual case or controversy and would render any adjudication on the merits an impermissible advisory opinion); *Friends of the Everglades v. E.P.A.*, 699 F.3d 1280, 1288 (11th Cir. 2012) ("Hypothetical jurisdiction produces nothing more than a hypothetical judgment—which comes to the same thing as an advisory opinion, disapproved by this Court from the beginning.").

Throughout the Complaint, Plaintiffs allege that Defendants' conduct in operating the Hotfile website during the period prior to early 2011 makes them vicariously liable for the copyright infringement of Hotfile's users. *See, e.g.,* Compl. ¶ 33 ("Hotfile did nothing at least through early 2011 to remove copyrighted files from its system."). Indeed, the Complaint alleges that all of Plaintiffs' works identified on Exhibit A to the Complaint were available through the Hotfile website prior to February 18, 2011. *Id.* ¶ 7. Plaintiffs purposefully

circumscribed their claims to this time period so as to benefit from the collateral estoppel effect of Judge Williams's ruling in the Disney Action regarding the DMCA safe harbor's applicability to Defendants' conduct. Plaintiffs intentionally brought a very narrow claim, seeking to simplify, as much as possible, the issues at stake in this litigation. Given the extensive infringing activity within the limitations period but prior to February 18, 2011, there was simply no need to litigate the question that Judge Williams did not reach; *i.e.,* whether Hotfile was entitled to the DMCA safe harbor for the infringing activity that took place through the Hotfile Website after February 18, 2011.

Titov alleges, and seeks a declaratory judgment in Count I, that after February 18, 2011 Defendants are entitled to the DMCA safe harbor. *See* Titov's Counterclaims ¶ 48 ("An actual controversy exists between the parties as to the applicability of DMCA safe harbor to Hotfile after February 18, 2011."). However, no such controversy exists. It appears, instead, that Defendants are attempting to use the current litigation with Plaintiffs to forestall future litigation with the countless other copyright holders whose works may have been infringed by Hotfile's users before Hotfile shut down in December 2013.

As a preliminary matter, "the DMCA does not provide an affirmative cause of action." *Arista Records LLC v. Usenet.com, Inc.*, No. 07 Civ. 8822 (HB), 2008 WL 4974823, 2008 U.S. Dist. LEXIS 95514, at *12 (S.D.N.Y. Nov. 24, 2008) (dismissing declaratory judgment counterclaims in copyright infringement action). The *Arista Records* court dismissed Usenet's counterclaim for a judgment that it is entitled to the DMCA safe harbor because, *inter alia*, "[i]f the plaintiff were to dismiss its infringement claim, Usenet's defense under the DMCA could not stand on its own and there would be no remaining case or controversy." *Id.* at *13.

There is also no actual controversy with respect to Count I because Plaintiffs do not challenge Hotfile's entitlement to the DMCA safe harbor for conduct occurring after February 18, 2011. Plaintiffs have not, and can state unequivocally that they will not, challenge Hotfile's entitlement to the DMCA's safe harbor after February 18, 2011. Rather, Plaintiffs' sole count against Defendants relies on Judge Williams's finding that the DMCA safe harbor does not apply to Defendants' conduct prior to that time.[1] Thus, the question Titov raises in Count I is moot because Defendants have no need to defend this lawsuit based on any claimed entitlement to the safe harbor after February 18, 2011.

Given such a covenant from Plaintiffs (*i.e.*, that they are not suing and will not sue Defendants for infringing activity on the Hotfile Website after February 18, 2011, or challenge Hotfile's claim of entitlement to the safe harbor for activity from that date forward), there is no justiciable issue as to Count I. *See generally Dow Jones & Co. v. Ablaise Ltd.*, 606 F.3d 1338, 1348 (Fed. Cir. 2010) (holding that defendant's covenant not to sue for infringement of its patent extinguished the case or controversy between the parties and divested the district court of subject matter jurisdiction). Without an actual case or controversy as to Hotfile's entitlement to the DMCA safe harbor after February 18, 2011, the Court lacks jurisdiction to render the declaratory judgment Titov seeks in Count I. *See* 28 U.S.C. § 2201(a) (actual controversy required for federal declaratory judgment action). Were it otherwise, any decision the Court renders would be an impermissible advisory opinion. *See Odyssey Marine,* 512 Fed. App'x at 895-96; *BAC Funding,* 2014 U.S. Dist. LEXIS 5736, at *19.

---

[1] There is no reason for Plaintiffs to look to the period beyond February 18, 2011 (or to address whether Hotfile would be entitled to the DMCA safe harbor after February 18, 2011 under the law). From a damages standpoint, Plaintiffs are able to confine their claim to the period prior to February 18, 2011, but within the limitations period, because the sheer scale of infringement on the Hotfile Website, even during that limited time frame, is so great.

Accordingly, the Court should dismiss Titov's counterclaim in Count I for lack of jurisdiction because it does not allege an "actual controversy" as required by Article III of the Constitution and the federal Declaratory Judgment Act.

## II. THE COURT SHOULD EXERCISE ITS DISCRETION TO DISMISS TITOV'S COUNTERCLAIMS (COUNTS I-III)

"Under the federal Declaratory Judgment Act, a court maintains broad discretion over whether or not to exercise jurisdiction over claims." *Knights Armament Co. v. Optical Sys. Tech., Inc.,* 568 F. Supp. 2d 1369, 1374 (M.D. Fla. 2008). "The Declaratory Judgment Act provides that a court *may* declare the rights and other legal relations of any interested party, not that it *must* do so." *MedImmune, Inc. v. Genentech, Inc.,* 549 U.S. 118, 127 S. Ct. 764, 776 (2007); *see also Ameritas Variable Life Ins. Co. v. Roach*, 411 F.3d 1328, 1330 (11th Cir. 2005) (noting that the Declaratory Judgment Act "only gives the federal courts competence to make a declaration of rights; it does not impose a duty to do so"). The courts thus have "unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286, 115 S. Ct. 2137 (1995). Here, the Court should exercise its discretion not to hear the Counterclaims.

### A. Counts I-III Should Be Dismissed Because They Are Redundant and Serve No Useful Purpose.

Even where it appears that there is an underlying controversy between the parties, a court may decline to exercise jurisdiction over a declaratory judgment claim if it determines that the claim is redundant and will serve no useful purpose. *See BAC Funding*, 2014 U.S. Dist. LEXIS 5736, at *16 (S.D. Fla. Jan. 16, 2014) ("When deciding whether to dismiss a counterclaim on the basis that it is redundant, courts consider whether the declaratory judgment serves a useful purpose.") (internal quotations and citations omitted); *It's a 10, Inc.*

*v. Beauty Elite Group, Inc.*, No. 13-60154-CIV-COHN, 2013 WL 4543796, 2013 U.S. Dist. LEXIS 121773, at *6 (S.D. Fla. Aug. 27, 2013) (same). "In determining the usefulness of a claim, courts may consider 'whether resolution of plaintiff's claim, along with the affirmative defenses asserted by defendants, would resolve all questions raised by the counterclaim.'" *It's a 10, Inc.,* 2013 U.S. Dist. LEXIS 121773, at *7 (quoting *Gratke v. Andersen Windows, Inc.,* No. 10-CV-963, 2010 WL 5439763, 2010 U.S. Dist. LEXIS 137047, at *8 (D. Minn. Dec. 8, 2010)).

As described above, Plaintiffs allege that Defendants are vicariously liable for providing the mechanism, encouraging, facilitating, and financially benefitting from Hotfile's users' infringement of Plaintiffs' copyrighted works. In response, Titov asserts eighteen affirmative defenses and three counterclaims for declaratory relief. Counts I-III—and three of Titov's eighteen affirmative defenses—assert that the applicability of the DMCA safe harbor, the statute of limitations, and the doctrine of laches preclude Plaintiffs' claim. Thus, the Counterclaims seek nothing more than adjudication that Titov's first, second, and fifteenth Affirmative Defenses defeat Plaintiffs' claim for vicarious copyright infringement.

Many courts, including numerous in the Southern District of Florida, have dismissed counterclaims that contain repetitious issues already before the court by way of the complaint or affirmative defenses. In *It's a 10, Inc. v. Beauty Elite Group,* the plaintiff filed suit alleging, *inter alia*, trademark infringement and counterfeiting, trade dress infringement, and unfair trade practice. 2013 U.S. Dist. LEXIS 121773, at *2. The defendant brought a counterclaim for a declaratory judgment that plaintiff's trade dress was not protectable and that defendant's use of a similar trade dress was not unfair or deceptive. *Id.* at *4-6. The court dismissed the counterclaims holding that they were mirror images of the plaintiff's

10

claim and duplicative of an affirmative defense. *Id.* at *14. Consequently, the court reasoned, "there is no need for the declaratory judgment" as the same legal and factual issues would be wholly resolved by the court's decision on plaintiff's claim and defendant's affirmative defense. *Id.*

Similarly, in *Knights Armament*, the defendant in a trademark infringement action filed a counterclaim seeking a declaratory judgment that it was the rightful owner of the technology for the products at issue. 568 F. Supp. 2d at 1375. In declining to exercise jurisdiction over the counterclaim, the court noted that the defendant was in effect seeking a final resolution of the ultimate issues by way of declaratory relief. *Id.* (holding that the infringement claims brought by both sides will decide the issues at stake in—and render unnecessary—the counterclaim for declaratory judgment). *See also Sembler Family P'ship #41, Ltd. v. Brinkler Fla., Inc.,* No. 08-cv-1212-T-24 MAP, 2008 WL 5341175, 2008 U.S. Dist. LEXIS 104707, at *4 (M.D. Fla. Dec. 19, 2008) (declining to exercise jurisdiction over defendant's declaratory judgment counterclaim because it mirrored plaintiff's claim and therefore was "redundant and unnecessary"). Here, Titov's Counterclaims mirror his affirmative defenses and likewise should be dismissed.

In another illustrative case, the court in *Miami Yacht Charters, LLC v. Nat'l Union Fire Ins. Co.*, stated "Defendant tacitly admits that its counterclaims are actually affirmative defenses by raising the identical claims as affirmative defenses." No 11-21163-CIV-GOODMAN, 2012 WL 1416428, 2012 U.S. Dist. LEXIS 57041, at *7-8 n.2 (S.D. Fla. Apr. 24, 2012) (dismissing declaratory judgment counterclaim because they required resolution of the same factual issues as the plaintiff's claims). The same is true here.

Furthermore, allowing a defendant to bring counterclaims for declaratory judgment

even though the same allegations are raised as affirmative defenses sets a dangerous precedent.  Doing so runs counter to the purposes of the Declaratory Judgment Act to simplify litigation and avoid multiplicity of litigation.  *Cf. Sonic Momentum B, LP v. Motorcars of Distinction, Inc.*, Case No. 11-80591-CIV-HURLEY, 2011 WL 4738190, 2011 U.S. Dist. LEXIS 116520, at *11 (S.D. Fla. Oct. 7, 2011) (allowing plaintiff to maintain declaratory judgment action because it served "the purpose of simplifying the litigation arising out of the underlying transactions").  Here, on the contrary, Titov's declaratory judgment counterclaim would needlessly complicate, delay, and increase the costs of litigation.

Consistent with *It's a 10*, *BAC Funding*, *Miami Yacht Charters*, *Knights Armament*, and *Sembler Family P'ship*, the Court should dismiss Titov's Counterclaims as the issues they raise are identical to and will be resolved by Titov's affirmative defenses to Plaintiffs' claim.  Retaining the Counterclaims in this case would be disruptive, confusing, and inefficient.

**B.   Count I Should Also Be Dismissed Because It Would Unnecessarily Complicate This Litigation, and Change Its Complexion Entirely.**

In addition to duplicating Titov's first affirmative defense, Titov's first counterclaim, seeking a declaratory judgment that Hotfile is entitled to the DMCA safe harbor after February 18, 2011, should not be heard because it would change the focus of this litigation entirely.  If allowed to stand, Count I would force the parties and this Court to expend a significant portion of their resources on far-reaching fact and expert discovery and become tangled in complicated legal questions of first impression in this Circuit.  The parties and the Court would step into this morass for an issue over which there is no actual controversy, and which is moot as it relates to this lawsuit.

As Judge Williams recognized in the Disney Action, the question of whether Hotfile is entitled to the DMCA safe harbor once it instituted a repeat infringer policy is a novel one

in the Eleventh Circuit. *See Disney*, 2013 U.S. Dist. LEXIS 172339, at *63, 80 ("While case law has developed in other parts of the country, construing these provisions is an issue of first impression in this Circuit."). The question of whether safe harbor applies is also incredibly complex, hotly debated, and often uncertain. Judge Williams noted several questions that would need to be analyzed and answered, such as:

> [W]hether [Hotfile could] ever regain the protections of the DMCA [after a finding that it was not initially entitled to the safe harbor] … ; whether the Court can determine the exact point at which Hotfile implemented a DMCA-compliant policy and, if so, whether the Court should use the date of technical compliance as the point of entry to safe harbor or whether the proper measure should be when Hotfile ceased to be a hotbed for infringement (since many DMCA requirements have a prospective purpose); and whether the parties have conducted a sufficient amount of discovery ….

*Id.* at *80 (despite issuing a thorough, 99-page summary judgment opinion, declining to decide whether Hotfile's liability is limited by the DMCA safe harbor after February 18, 2011). *See also Viacom Int'l Inc. v. YouTube, Inc.*, 676 F.3d 19 (2d Cir. 2012) (determining applicability of the DMCA safe harbor, 17 U.S.C. § 512(c), to infringement claims against internet storage service provider after prolonged litigation); *UMG Recordings, Inc. v. Veoh Networks, Inc.*, 718 F.3d 1006 (9th Cir. 2013) (same).

If the Court chooses to decide whether Hotfile is entitled to the safe harbor after February 18, 2011, the parties will undoubtedly have to engage in extensive discovery and briefing, with both the Court and the parties spending significant time and resources on a complicated, but collateral issue that has no bearing on this litigation. Plaintiffs would undoubtedly be prejudiced by the resulting costs and delay. This potential for prejudice is reason enough for the Court to dismiss Count I. *See, e.g., Minute Man Anchors, Inc. v. Oliver Techs., Inc.*, CIVIL No. 1:04CV27, 2005 WL 3488442, 2005 U.S. Dist. LEXIS 38634, at *5

(W.D.N.C. Dec. 21, 2005) (dismissing counterclaims after determining that allowing them would not "result in judicial or litigation economy"); *Magnesystems, Inc. v. Nikken, Inc.* 933 F. Supp. 944, 952 (C.D. Cal. 1996) (dismissing counterclaims where they "would entirely change the focus of [the] case and, potentially prejudice the [p]laintiff"). Accordingly, the Court should dismiss Titov's claim for declaratory judgment with prejudice.

## CONCLUSION

For all the foregoing reasons, Plaintiffs respectfully request that the Court enter an order dismissing Titov's Counterclaims with prejudice, and grant such other and further relief as the Court deems just and proper.

Dated: December 18, 2014                    Respectfully submitted,

*/s/ Karen L. Stetson*

GRAY-ROBINSON, P.A.
Karen L. Stetson (FL Bar No. 742937)
1221 Brickell Avenue, Suite 1600
Miami, FL 33131
Tel: 305-416-6880
Fax: 305-416-6887
karen.stetson@gray-robinson.com

OPPENHEIM + ZEBRAK, LLP
Matthew J. Oppenheim (admitted *pro hac vice*)
Kerry M. Mustico (admitted *pro hac vice*)
4400 Jenifer Street, NW, Suite 250
Washington, DC 20015
Tel: 202-621-9027
matt@oandzlaw.com
kerry@oandzlaw.com

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished via ECF to the parties on the Service List below on this 18th day of December, 2014.

By: */s/ Karen L. Stetson*

## SERVICE LIST

Valentin D. Gurvits
Matthew Shayefar
BOSTON LAW GROUP, PC
825 Beacon Street, Suite 20
Newton Centre, MA 02459
Telephone: (617) 928-1804
Facsimile: (617) 928-1802
vgurvits@bostonlawgroup.com
matt@bostonlawgroup.com

Brady J. Cobb
COBB EDDY MIJARES, PLLC
642 Northeast Third Avenue
Fort Lauderdale, Florida 33304
Telephone (954) 527-4111
Facsimile (954) 900-5507
bcobb@cemlaw.net

Evan Fray-Witzer
CIAMPA FRAY-WITZER, LLP
20 Park Plaza, Suite 505
Boston, MA 02116
Telephone: (617) 426-0000
Facsimile: (617) 423-4855
Evan@CFWlegal.com