IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
CASE NO. 1:14-cv-20200-BB

PEARSON EDUCATION, INC.,
ELSEVIER, INC.,
CENGAGE LEARNING, INC.,
JOHN WILEY & SONES, INC., and
MCGRAW-HILL GLOBAL EDUCATION
HOLDINGS, LLC.,

Plaintiffs,

October 23, 2014
12:36 p.m.

vs.

HOTFILE, CORP. and
ANTON TITOV,

Defendants.

Pages 1 THROUGH 30

---

TRANSCRIPT OF MOTION TO DISMISS
BEFORE THE HONORABLE BETH BLOOM
UNITED STATES DISTRICT JUDGE

Appearances:

FOR THE PLAINTIFF: OPPENHEIM & ZEBRAK, LLP
MATTHEW J. OPPENHEIM, ESQ.
4400 Jenifer Street, NW, Suite 250
Washington, DC 20015

GRAY ROBINSON, PA
KAREN LINDA STETSON, ESQ.
1221 Brickell Avenue, Suite 1650
Miami, Florida 33131

FOR THE DEFENDANT: CIAMPA, FRAY-WITZER, LLP
EVAN FRAY-WITZER, ESQ.
20 Park Plaza, Suite 505
Boston, MA 02116

COBB, EDDY, MIJARES
BRADY JAMES COBB, ESQ.
624 NE 3rd Avenue
Fort Lauderdale, Florida 33304

ON BEHALF OF THE DEFENDANT:
(Continued)

BOSTON LAW GROUP, PC
MATTHEW SHAYEFAR, ESQ.
VALENTIN GURVITS, ESQ.
825 Beacon Street, Suite 20
Newton, MA 02459

COURT REPORTER: Yvette Hernandez
U.S. District Court
299 East Broward Boulevard, Room 207-B
Fort Lauderdale, Florida 33301
yvette_hernandez@flsd.uscourts.gov

COURTROOM DEPUTY: Case Number 14-20200, Civil, Pearson Education, Inc. et. al v. Hotfile Corp., et al.

Counsel, please state your appearances, for the record.

MS. STETSON: Karen Stetson, of Gray Robinson, on behalf of the Plaintiffs.

MR. OPPENHEIM: Matt Oppenheim, on behalf of the Plaintiffs, Your Honor.

THE COURT: Good afternoon.

MR. FRAY-WITZER: Good afternoon, Your Honor. Evan Fray-Witzer, from Ciampa Fray-Witzer, for Anton Titov.

MR. GURVITS: Val Gurvits, from Boston Law Group, for Anton Titov.

MR. COBB: Brady Cobb from Cobb, Eddy & Mijares, on behalf of Defendant.

THE COURT: Good afternoon. Go ahead and have a seat. We're here with regard to Docket Entry 16, which is Anton Titov's motion to dismiss for lack of jurisdiction, and I thank you for educating the Court with regard to the motion, the response, and the reply. And perhaps -- I don't know who is going to be speaking on behalf of Mr. Titov ---

MR. FRAY-WITZER: I will be, Your Honor.

THE COURT: And the reason why I ask is: I have three attorneys who filed a motion for pro hac vice, and I did grant that request, and I also have a notice of appearance by

Mr. Cobb on behalf of each of the defendants. So Mr. Fray-Witzer, are you going to be responding?

MR. FRAY-WITZER: I will, Your Honor.

THE COURT: All right. And were you -- actually, it was Matthew Shayefar, in his reply, that was kind enough to provide the Court with Senator Patrick Moynihan's quote, which is that everyone is entitled to his own opinion, but not his own facts.

MR. FRAY-WITZER: Yes, Your Honor.

THE COURT: So along those lines -- and perhaps I may ask you that, putting aside the issue of collateral estoppel, in terms of liability, vicarious liability of Mr. Titov, if the Court were to look at the facts, and it appears that at the time Judge Williams entered her order granting summary judgment, and that order was premised on undisputed issues of material fact at that time that she entered that order, and certain findings of fact were established, why wouldn't the Court accept those findings of fact in her order?

MR. FRAY-WITZER: Well, Your Honor -- and I know you've said that you want to put the res judicata issue aside for a moment, although that is an important way to answer your question. The reason that you are putting the facts aside is in part because you're not putting the facts aside. The fact of the question of Anton Titov's jurisdiction in Florida was never actually decided in the Disney case. In fact, to the

contrary, what happened is that Mr. Titov, at summary judgment, did attempt to raise the issue of jurisdiction and Judge Williams said: "Too late. It was waived by your counsel by their failure to raise the issue in the first 12(b) motion," and that's true. If you don't raise -- even though it was raised in the answer, even though it was raised in some preliminary pleadings, if you don't raise the jurisdictional issue in the first 12(b) motion, it's deemed to be waived. And what Judge Williams said was: "At this point in time, I can't see anything but a waiver of that issue for this case."

And so, Your Honor, it was not an issue that was necessarily decided. It was not an issue that was actually litigated in that case. It was not an issue that Judge Williams actually opined on other than in a footnote to say, "I'm sorry. But you've waived it."

THE COURT: And I agree with you that she was not faced with that issue because she noted -- even though it was contained within the motion for summary judgment, she noted that it had been waived by Mr. Titov's appearance and by the mere fact that it had not been raised in the first initial pleading. But my question is much more specific, and that is: In making a determination as to whether Florida's Long-Arm Statute applies, and thus subjects Mr. Titov to jurisdiction in this forum, why wouldn't the Court be able to accept the facts that Judge Williams accepted? And that specifically is that

Mr. Titov was determined to be a high ranking central figure at Hotfile; that he owned a stake in the company; that he was indispensable in the company's formation, crucial to the development of its business model; that he personally had a hand in every aspect of the conduct, underpinning the -- in that case, the theories of liability, but that he was involved with Hotfile and that he undertook a management role, in which he oversaw contractors working for Hotfile and participated in maintaining the storage and delivery technology. So with regard to those facts, why wouldn't the Court accept the facts determined -- and they were undisputed -- but they were determined by Judge Williams in the Disney case? Why couldn't the Court accept those facts in making a determination, specifically as to whether Mr. Titov engaged in substantial and not isolated activity within this state?

MR. FRAY-WITZER: There are two answers to that, Your Honor. The first is that the date on which the complaints were filed are separated by three years, and that's relevant for a really specific reason. I have to admit, I looked up this morning Your Honor's bio. I understand that you were born in the Bronx. I was born in Brooklyn. I haven't been in New York as a resident of New York since I went to college 30 years ago. Well, certainly, at some point in time, I could have been subject to jurisdiction in New York. My actions back then would have subjected me to jurisdiction if a claim was brought

against me in New York during the relevant statute of limitations period. That's not the case here.

The actions that they are alleging that bring Mr. Titov into this court -- and I would submit for each of the actions that are alleged in the complaint, you have to ask yourself four questions: What was the action that we're talking about? Because it has to be a tortious action to bring him into the state. Who took the action? Was it Mr. Titov or was it Hotfile? Where did the act occur? Is it Florida or is it somewhere else? And when did the act occur?

The actions that were alleged in the Disney case that brought Hotfile into Florida were that, in 2009, Hotfile was operating the Hotfile website that was alleged to have been set up in a manner that facilitated copyright infringement. In 2011 -- and Judge Williams found this as well -- in 2011, things radically changed. Hotfile had beefed up their repeat infringer policy. They had implemented all sorts of safeguards against infringement. The complaint in this case is filed in January of 2014. The three-year statute of limitations -- you can look back three years to January of 2011, but if you will look back to 2011, there aren't actually tortious acts that bring Mr. Titov into the state. And moreover, the allegations that Mr. Titov, in the summer of 2010, was in Florida doing work for a non-party company, again, you're outside of the actual limitations period.

And so when you say: "Why can't the Court simply accept the facts as found by the judge in the Disney case," my argument would be: First of all, you can to an extent. You certainly can say back when Hotfile was an operational website, and Hotfile Corporation was an operational company, that Mr. Titov had a certain role in that company. But the problem is, is that, the facts changed between 2009 and 2011 and 2014, which is where we are now. The fact that Mr. Titov might have -- and actually wasn't found to be -- but that Hotfile was subject to jurisdiction in 2011, may or may not mean that he's subject to jurisdiction in 2014.

I think that when you look at the actual allegations with respect to Mr. Titov -- and it needs to be the allegations with respect to him -- you certainly have allegations that he played a role in Hotfile, that he was instrumental in running the website. He was a minority shareholder in it, but he was a shareholder in the company. All of those allegations are there. They are not enough to bring him in here jurisdictionally. And there is a difference, I would submit, between the facts that are necessary to say that someone might be jointly liable -- they can make those allegations that Mr. Titov could be jointly liable for acts that Hotfile took -- and Constitutional requirements to assert personal jurisdiction over someone. And so, all the time, we have cases where parties may be jointly liable for actions, and yet you

still need to bring the action in a place where you can actually reach that defendant. And they can't reach Titov here because he doesn't live here. He has not lived here. He has almost no connections to Florida, and certainly within the relevant time periods he didn't have those necessary ---

THE COURT: May I stop you because with regard to these relevant time periods -- and I understand the argument is that his active participation with Hotfile at some point ceased, but my -- I guess my question to you is: Where does -- is it Lemuria -- where does Lemuria come in with regard to his operation as the sole owner, manager, and director of Lemuria; his operation of Lemuria and Hotfile while physically present in Florida; his extensive involvement with that corporation as late as 2014, when Lemuria Communications filed their corporate report with the Florida Department of State, Division of Incorporation, in which he was listed as the only officer and director?

MR. FRAY-WITZER: And as we say in the briefs, and as the cases say, the incorporation of a company in Florida, being an officer or director of a company Florida, if you are not running the company from Florida, is not enough to establish personal jurisdiction.

Lemuria -- and you have to at that point ask the question: Well, are we talking about a general jurisdiction argument or a specific jurisdiction argument? If you're

talking about a general jurisdiction argument, Your Honor, the cases are really clear. It has to be as if you were virtually here. There is no allegation -- and it actually simply isn't the case, and Mr. Titov's affidavit says: "I haven't been to Florida, except for twice in connection with the Disney case" ---

THE COURT: Mr. Fray-Witzer, I apologize, sir.

Did we just ask them to leave? Are they coming around to do the -- my apologies. I had the jury, just so that you know, sitting in absolute darkness, so I'm hoping that they are going to come back in before 1:15. My apologies.

MR. FRAY-WITZER: And so, Your Honor, the question of Lemuria is -- and I'm sorry. I have lost ---

THE COURT: And I probably took you off track, but you were speaking of the general jurisdiction, as opposed to ---

MR. FRAY-WITZER: With respect to general jurisdiction, the question is whether or not he is so substantially here -- he, not Lemuria -- so substantially present that it is as if he is virtually in the state. There isn't a single allegation that would support that. He doesn't have a bank account here. He doesn't pay taxes here. He doesn't live here. He doesn't have a resident agent here. He doesn't have employees here. He, Mr. Titov, is not present in Florida. It would be like any other company that has a satellite office somewhere -- and it's not even really a

satellite office. He is not physically present running anything from Florida. Lemuria has a presence here. Lemuria may be doing business here. But the question isn't whether or not there's jurisdiction over Lemuria. The question is if there's jurisdiction over Mr. Titov.

And then if you look towards the specific jurisdiction -- because, you know, the cases say that general jurisdiction is a very, very high hurdle -- with respect to specific jurisdiction, the only thing that they say is: "Well, Hotfile contracted with Lemuria for Lemuria to provide internet services, and so by virtue of the fact that Lemuria provided internet services, well, Hotfile could never have been operating without internet services." It would be as if you would say: I own a few shares of Comcast, and if Hotfile was getting its internet services from Comcast, well, that subjects you to jurisdiction because the company is contracting with a service provider. The cases are very clear that that is not sufficient to establish specific jurisdiction over a defendant.

Does that answer the question?

THE COURT: It does. Did you want to expand on the argument with regard to Judge Williams' acceptance of the facts because I want to -- before I turn it over, I want to make certain that you have addressed that issue. Not the collateral estoppel with regard to the vicarious liability, but just the Court accepting -- this court accepting Judge Williams'

determination.

MR. FRAY-WITZER: I guess all I would say again on that particular point is: You can accept the determinations that Judge Williams made as facts that are established at a particular point in time. Those are the facts that were established at a particular point in time. And you need to then ask the four questions of: Well, what do those facts show for jurisdiction? And the only thing that ties Mr. Titov -- because there's no claim of direct infringement here. It is only a contributory infringement claim. And so what they have alleged that Mr. Titov did improperly was he set up Hotfile. They allege he was running Hotfile. They allege that he was responsible for the decisions of Hotfile. That is relevant because, in 2009, according to what Judge Williams found, Hotfile was operating in a manner in which it encouraged infringement. That's not the case in 2011. And 2011 is important because it is three years before the filing of this complaint, where the statute of limitations cuts things off.

In 2011, those actions, even if you accept them, even if you say they were still occurring in 2011; Mr. Titov was still a principal member of Hotfile in 2011; he was still a guiding spirit in 2011. Okay. Let's accept those. You're missing the tortious part there. That's what brings you in under the Florida Long-Arm Statute, is that those acts are tortious. They are no longer tortious because Hotfile is no

longer a site that could even arguably be said to be encouraging infringement. They have a good repeat infringer policy. They have cracked down on infringement. It's not the tortious act anymore that brings you in.

THE COURT: All right. And if the Court accepts that argument -- and I understand you gave the argument of Brooklyn and the Bronx, and I must say that was certainly some time ago -- but is there any support, any authority, any case that I can look to that tells the Court that Mr. Titov's conduct that predated the statute of limitations, but resulted in an infringement within that statutory period, that that insulates Mr. Titov from liability?

MR. FRAY-WITZER: Well, again, I need to first address the premise. The premise that there was infringement during the statutory period, we would suggest, is wrong. The complaint doesn't even say it. The complaint says that back in 2011 ---

THE COURT: 2011 forward. That's right.

MR. FRAY-WITZER: There is no -- you know, once we get to that point, we have wonderful DMCA defenses. We are completely immune from suit under the DMCA because we, as of 2011, are fully and completely compliant. And so I would just as a first point, you know, dispute the premise that if there were actions taking place during the statutory period they're warranted, and we don't think they really allege that they are.

But more than that, I guess what I would point to as by way of analogy is: It is like the establishment of diversity jurisdiction. You have to look at it at the time the complaint is filed. You have to look at whether or not jurisdiction is viable when the complaint is filed. And our argument is that it just wasn't.

THE COURT: Okay. Thank you, sir.

MR. FRAY-WITZER: Thank you.

THE COURT: Mr. Oppenheim?

MR. OPPENHEIM: Good afternoon, Your Honor.

Mr. Titov seeks to escape responsibility for a massive infringement operation that it is clear he masterminded and profited from. Judge Williams spent a significant amount of time on this case.

THE COURT: But she did recognize that the personal jurisdiction issue is waived, so focusing on and looking at the Long-Arm Statute, let's look at each facet in terms of what Mr. Titov's contacts are that would be sufficient to hail him into this jurisdiction.

MR. OPPENHEIM: Absolutely, Your Honor. And I don't -- and I agree with Your Honor, and I agree with what Opposing Counsel said that the fact that there was personal jurisdiction over Titov in the Williams -- in the Disney case, is not dispositive. But the findings by Judge Williams in the Disney decision about his conduct absolutely apply, and the

Court would be erring to disregard those findings, especially since those findings directly relate to the claims that the book publishers have asserted here.

THE COURT: I'm accepting the findings when it relates to exactly what I read. That is, that he was a high-ranking central figure at Hotfile, and all of those facts that bear on a relationship with Hotfile. But then I'm going to ask you to address Mr. Fray-Witzer's argument with regard to the statute of limitations because even if the Court were to accept at that point in time that that was the relationship, the argument is that that active participation ended.

MR. OPPENHEIM: So I have a couple responses to that. First, let me start with: Your Honor did a nice job of summarizing some of the key facts out of Judge Williams' decision that are applicable. I think there are even more beyond what you listed, and maybe you did that for the benefit of time, but there are lots of additional facts in her decision indicating Mr. Titov's truly active participation in running Hotfile and the connection between Lemuria and Hotfile. And to the extent that the Court wants me to review them, I will, but let me turn to the statute of limitations issue. And I must say this is a first for me that I come to a motion to dismiss on personal jurisdiction, where the statute of limitations issue hasn't been briefed, and yet here we are now arguing the statute of limitations. There is a totality in the Defendant's

brief of maybe three or four sentences on the statute of limitations, which is not fully laid out, but I am prepared to speak to it, Your Honor, because it doesn't make sense, and let me explain why.

First off, the infringement at issue is during the same time period as Judge Williams' findings apply. Now the Defendants want to say: "Well, immediately upon filing, things changed," but they actually haven't put that forward factually, nor do I think could they. In fact, maybe, as facts might show as this case goes forward, at some point after Disney filed their complaint ---

THE COURT: I'm sorry. You're making the argument that the infringement at issue in this case is at the point in time when Judge Williams ---

MR. OPPENHEIM: Well, certainly, there is at least a three-week period.

THE COURT: That's what it is.

MR. OPPENHEIM: But it's actually more than three weeks because the Defendants are very careful in the way they draft this. They say, at some point after the Disney case was filed, facts changed and they believe that they would obtain the benefit of a safe harbor, which certainly hasn't been litigated. No facts have been put forward to address that. But we don't know whether the facts changed the day of the filing -- which I would highly suspect. Why would they change

it the day of the filing -- or six months after the filing. We have no idea.

But there was some period of time, right, whether it's three weeks or its six months, during which Judge Williams' decision and her findings with respect to the safe harbor absolutely apply. And, Your Honor, think about it substantively in terms of the issues in this case. So what they're saying -- so there were hundreds of millions, billions of files on Hotfile, infringing files being distributed to people around the world, including in Florida. What they are saying is: Okay. At some point in time after February 8th of 2011, they implemented a repeat infringer policy.

Okay. Those billions of files are still on the servers. Those billions of files are still being downloaded. The publisher's rights are still being infringed. So it's a very interesting question -- which, I don't think this court will ever get to. Maybe we will -- whether or not they can suddenly say: "We're not responsible, now that we have the safe harbor, for the infringement that occurs after we implemented a repeat infringer policy, but is only occurring by virtue of the fact that we didn't have one before because those files would have been removed from the servers or would never have come up onto the servers."

So anyway, these are very interesting issues, not issues that get addressed now. So the question is: Should

Mr. Titov be subject to jurisdiction of this court? And the answer is: There are four ways this court could find it, and any of those four work. You could certainly find that there's general jurisdiction here. He's running a business that is in Florida. Now, Your Honor, he could have set that company up in Bulgaria, where he lives -- claims to live. He could have set it up in Russia, where he apparently claims to be a citizen. He could have set it up in some other foreign country. He could have set it up in Texas, where Hotfile had servers for a while. Right? He could have -- he could have set it up anywhere. He chose Florida. And he didn't change that Florida address. Right? He kept it here even after the filing, and it continues in existence today, continues to file, and continues to serve the successor entity to Hotfile. So you could certainly find that there's general jurisdiction.

And I will say that the facts as put forward by the Defendants in their briefing about his participation, or his connections to the United States, are really somewhat disingenuous. He testified in an affidavit he lived here for the summer of 2010. He came here up to ten times. He continues to operate the business. When he was here, he was running Lemuria, for purposes of serving Hotfile, and he was engaged in the business of Hotfile. It's hard to imagine having more connections to Florida if you're setting this up. Right?

You could find it under either of the two specific jurisdiction provisions -- find jurisdiction -- either because he committed a tort, right, or the operation of a business.

And if all that doesn't work, Your Honor, then certainly Rule 4 of the Federal Rules would give you a basis to find personal jurisdiction here.

You know, what Mr. Titov really wants is to escape being held responsible for his actions. So they have got a Panamanian corporation, with a guy who lives in Bulgaria, says he's a citizen in Russia, sets up a company in Florida, servers in Texas. This guy wants to say: "I'm nowhere. I live in a cloud and I shouldn't be held responsible," and that can't be the case. He has clear connections here in Florida, and the Court shouldn't lose track of that.

And I want to just clarify one other thing that Opposing Counsel said at some point -- and I think it was probably just a slip of the tongue -- indicated that the claims here that the publishers had brought were contributory infringement claims. They are not, Your Honor. They are vicarious liability claims, which are exactly the same claims that Judge William found liability on as against Mr. Titov.

Does the Court have any further questions?

THE COURT: Did you want to -- I know you stated that there were four grounds.

MR. OPPENHEIM: Right.

THE COURT: And I only have three.

MR. OPPENHEIM: Okay. Sorry.

THE COURT: So which one am I ---

MR. OPPENHEIM: Well, I split specific jurisdiction really into the two different bases under the Florida Statute that you could find jurisdiction, Your Honor. Certainly -- certainly, you could find that he's engaged in business in Florida. Right? And ---

THE COURT: At present with Lemuria?

MR. OPPENHEIM: Absolutely. And this idea that the corporate shield doctrine somehow applies, corporate shield on its face doesn't apply. The corporate shield doctrine, for two reasons, doesn't apply. First, the acts that the Plaintiffs have alleged that Mr. Titov engaged in, and the acts which are laid out in Judge Williams' opinions, occurred in Florida. And so on the face of it then, the corporate shield doctrine doesn't apply. But even if you find that not to be the case, there's a clear exception that intentional misconduct is an exception to the corporate shield doctrine. And here, we've alleged willful infringement, which is intentional misconduct under the law.

THE COURT: But in terms of the corporate shield doctrine as applied to Lemuria, I think that's the argument. And that is that there was a mere formation of this corporation in Florida, to which Mr. Titov had no active participation.

MR. OPPENHEIM: Well, that he had no active participation with Lemuria?

THE COURT: That's what I understand to be the argument.

MR. OPPENHEIM: Well, I think the facts that have been put forward in the papers make clear that's not true. I mean, he's the sole shareholder and the sole operator of Lemuria. He was paid by Lemuria. He physically ran Lemuria when he was here and now remotely runs Lemuria. And Lemuria -- let's just kind of back up. The Defendants, in their briefs, refer to Lemuria as a non-party. Lemuria is the lifeline -- was the lifeline for Hotfile.

THE COURT: But it is a non-party in this action.

MR. OPPENHEIM: Well, we haven't sued Lemuria. There's no reason to sue Lemuria because Lemuria is simply a guise for Mr. Titov, whose active involvement personally makes him liable for the infringement. And under copyright law, it's clear you cannot -- you cannot hide behind a company, and engage in infringement, and believe that you're isolated -- insulated from the law. That's clear copyright law. As Judge Williams understood, you apply the law. And he's clearly engaged in infringement. Lemuria doesn't protect him from that.

THE COURT: Thank you, sir.

MR. OPPENHEIM: If I may turn to one other issue.

THE COURT: Certainly.

MR. OPPENHEIM: The Court yesterday, I understand, entered an order.

THE COURT: I did, with regard to the mediation.

MR. OPPENHEIM: If I may address that, Your Honor. I believe that our due date to oppose the Plaintiff's -- or the Defendant's request was this forthcoming Monday, upcoming Monday. We did intend to address that, Your Honor, for several reasons. First off, there is case law in this jurisdiction indicating that in-person mediation needs to be in person, and we believe that that rule should apply here. And the reason is -- and it's not just to make this difficult on Mr. Titov. The reason is: In many years of mediating cases, they -- it does not work when the principals are not present. It just -- settlements don't happen that way. And this is a case that should ultimately settle because the issues -- more so than almost any other case. Right? This is a case where Judge Williams has already found liability. Right? Most cases, you go in, you don't know where the court's going to come out. Here, we really do because we have a decision that applies, so we ought to be sitting down and trying to resolve this. And to do that, Mr. Titov has to be present. And being present by Skype doesn't do it, so either we should have a mediation that's going to be effective and Mr. Titov should come -- and I don't believe it's nearly the burden that he lays it out to

be -- or -- and by the way, while he's here, he can continue to engage in his business activities for his company that's located here. Rarely, do you find someone from Bulgaria probably complaining about coming to Fort Lauderdale.

But if we're not going to require Mr. Titov to attend, well, then, let's just do away with the mediation. Don't force my clients to come down from New York and New Jersey and Connecticut, and everywhere else, to attend a mediation where he's attending by Skype because it's not going to be productive.

THE COURT: All right. Well, thank you for bringing that to the Court's attention. Let's somewhat cross that bridge when we get there in terms of personal jurisdiction because if, in fact, that's the case, then perhaps coordination can be made, when something is occurring here in Fort Lauderdale, that Mr. Titov may be present. I know that the mediation is already scheduled. Perhaps depositions may be scheduled toward that end and coordination can be made. But at this point, I'll certainly give you an opportunity to persuade the Court as to why Skype or a video conferencing at mediation is not appropriate in this case.

MR. OPPENHEIM: Thank you, Your Honor.

MR. FRAY-WITZER: Your Honor, if I may, I'll take it in backwards order for a moment. My brother, I believe, is operating under the old rules that gave him 14 days. The rules

changed. He had 10 days to oppose. They did not oppose. They filed no opposition. We think we've laid out in the motion why ---

THE COURT: Yeah. I mean, obviously, traveling from Bulgaria, the Court accepted the representation, and this is not the first time that the Court has allowed attendance by way of video conferencing and Skype. But I'm certainly going to give Counsel an opportunity, if the time period allows, to persuade the Court.

MR. FRAY-WITZER: I will, with the Court's permission, make just a few points in response. The first -- and I suppose I should have started with it, although, I know that the Court is familiar with it -- the burden is on the Plaintiffs here. It is the Plaintiff's burden to prove that they can bring a foreign national into this court. And with due respect, they haven't done it. We're talking about -- and my brother sort of acknowledged -- we're talking about this three-week period in which maybe there is a gap. And the question then becomes: What has the complaint alleged that Anton Titov did within those three weeks that's improper? Nothing. Absolutely nothing. When they go back ---

THE COURT: I'm not sure if I am accepting this three-week argument. And I believe that for purposes of shifting any burden where the complaint alleges in particular that the Defendant committed a tort in Florida, in this

jurisdiction, I believe that that, in and of itself, is sufficient.

MR. FRAY-WITZER: And so the question becomes: What is that tort? What is the tort? The only thing that they say -- the only thing that they allege is: Mr. Titov set up a website, or was instrumental in setting up a website, that vicariously led to infringement. That occurred in 2009.

THE COURT: But that's the cause of action. The cause of action is copyright infringement, which is, in and of itself, a tort. And the Eleventh Circuit has held that the tortious act provision of the Long-Arm Statute authorizes personal jurisdiction based on that copyright infringement, so I do not necessarily accept the -- I certainly don't -- that the Plaintiff has not established, for purposes of shifting the burden, that there's a tort that occurred here in this jurisdiction.

MR. FRAY-WITZER: But the problem with that, Your Honor, is that, assuming that that tort occurred, it occurred in 2009, which is outside the statute of limitations. And when you are asking the question of what did Mr. Titov do that brings him within this Court's jurisdiction, it needs to be something that he did within the relevant time period, and that is where the disconnect comes in.

I'll briefly say that my brother talks about the corporate shield -- and again, this is sort of where the

disconnect comes in. He says: "Well, we get around the corporate shield because there was a tortious act." What's the tortious act? The thing that happens in 2009, which is outside of the statute of limitations for this case.

Thank you.

THE COURT: All right. Do we need a surrebuttal?

MR. OPPENHEIM: Can I get two sentences in?

THE COURT: All right. Certainly.

MR. OPPENHEIM: I don't think it's right to say, as a legal matter, that -- first off, he's factually wrong that the tortious acts exclusively were in 2009. Judge Williams' opinion goes through that it was ongoing. It wasn't just setting up a website. There was a lot more involved, and the Court's well aware of that by the facts you've already recited. But I think he's just legally wrong that the facts that constitute the basis for personal jurisdiction have to be within the statute of limitations. And you can just imagine all kinds of scenarios where somebody engages in a fraud that they cover up, and then the fraud is discovered later, and they bring an action and they say: "Well, I engaged in that fraud eight years ago, so I can't be subject to this Court's jurisdiction." I don't think that's right legally, Your Honor, and I don't think he can cite -- or has cited to any case law to support that argument.

THE COURT: All right. Thank you both for taking the

time to educate the Court. And then I do want to spend a moment with regard to the mediation.

Addressing the motion to dismiss for lack of personal jurisdiction, the Court accepts the facts that are set forth in the Disney case by Judge Williams. That was on a motion for summary judgment. There were undisputed issues of fact that the Court used in making a determination as to whether there was vicarious liability, and I've stated from the beginning that, at this juncture, the Court accepts the facts in terms of Mr. Titov's involvement with Hotfile. And Judge Williams, while she found that Mr. Titov may be held vicariously liable for the tortious acts of Hotfile users, the Court believes that what has been established are sufficient contacts and recognizes that the tortious conduct is sufficient.

So based on the activities imputed onto Mr. Titov, by virtue of his extensive involvement in Hotfile -- and those facts are set forth by Judge Williams -- but also, his operation of a business here in the state of Florida, and the Court accepts Exhibit 11 to Plaintiff's response, which is the declaration of Mr. Titov, in which his operation of a business is not merely an isolated activity, but the Court finds that certainly he engaged in a substantial and not isolated activity within the state, which certainly brings jurisdiction proper under Section 48.193, Subsection 2. As such, the motion to dismiss would be denied.

How much time is needed by Mr. Titov to properly answer the complaint?

MR. FRAY-WITZER: Twenty days, Your Honor.

THE COURT: All right. So 20 days is granted.

Now, I do want to address the mediation because I'm certain that, at some point in time, the issues that were addressed in Judge Williams' case will become issues in this case, whether substantially or perhaps in passing. But in either event, I think that, for purposes of allowing the parties to engage in settlement, what I would like to do is: If there is a time when Mr. Titov is going to be here for purposes of his deposition, or any other activity that may take place in Florida, then I'm happy to work with each of you to reschedule the mediation so that it can be at a time that works for everyone.

MR. FRAY-WITZER: If I may, Your Honor, I will say -- and I'm happy to brief this for the Court because it's an issue that I'm well familiar with -- within the federal courts, the law is legion that, even if you have jurisdiction over a foreign defendant, you go where he is. You chose where you sued him, but you go to where he is ---

THE COURT: Everybody going to Bulgaria?

MR. FRAY-WITZER: I guess everyone's going to Bulgaria and we can have a mediation there, Your Honor. But I cannot say at this moment there is any intention that Mr. Titov will

be back in the U.S., certainly given the fact that my brother used his presence in the U.S. in this case to establish -- in the Disney case, to establish personal jurisdiction over him in this case. We're not going to take that risk for another person saying: "Oh, well, he came back to the United States." The law is very clear that you take the deposition where you find the ---

THE COURT: I understand that's the law, but I'm looking at one, two, three, four, five, and perhaps more attorneys, who are going to be spending the cost to go to Bulgaria. It may be more beneficial for Mr. Titov to have Mr. Titov come to Florida, but that's for another day. I was merely suggesting for purposes of facilitating any possible resolution of the case. I'm here if the case cannot be resolved, and that's my function, but I thought perhaps I would -- sometimes the vantage point here is a little bit clearer than at advocate's table.

And let me ask Mr. Fray-Witzer: Is Mr. Oppenheim your actual brother?

MR. FRAY-WITZER: No, Your Honor.

THE COURT: You were referencing brother.

MR. FRAY-WITZER: It is, at least within Massachusetts, still a custom to refer to counsel as your brother.

THE COURT: I love that. It's very nice, but I did

note perhaps you might have been related.

MR. OPPENHEIM: I think that would elevate sibling rivalry to a whole new level, Your Honor.

THE COURT: It's healthy. It's healthy discord.

MR. FRAY-WITZER: I was at another a firm where one of our trials was on Court TV. One of the supervising attorneys referred to opposing counsel as "my brother," and along the bottom of the screen they wrote: "The attorneys are not actually brothers," and so I apologize.

THE COURT: All right. So 20 days is sufficient. I will give Mr. Oppenheim an opportunity to persuade the Court why Mr. Titov should be required to be present in Florida. But let me then suggest, given the amount of time and effort of traveling to Bulgaria, that it may make more sense to work with Mr. Titov's schedule, if he does plan on coming back here. Okay?

MR. OPPENHEIM: Thank you, Your Honor.

MR. FRAY-WITZER: Thank you, Your Honor.

THE COURT: Is there anything else we need to address in this case?

Okay. Have a good afternoon. Look forward to working with you.

(Proceedings concluded at 1:18 p.m.)

UNITED STATES OF AMERICA ) )

ss:

SOUTHERN DISTRICT OF FLORIDA )

C E R T I F I C A T E

I, Yvette Hernandez, Certified Shorthand Reporter in and for the United States District Court for the Southern District of Florida, do hereby certify that I was present at and reported in machine shorthand the proceedings had the 23rd day of October, 2014, in the above-mentioned court; and that the foregoing transcript is a true, correct, and complete transcript of my stenographic notes.

I further certify that this transcript contains pages 1- 31.

IN WITNESS WHEREOF, I have hereunto set my hand at Miami, Florida this 29th day of December, 2014.

/s/ Yvette Hernandez____________

Yvette Hernandez, CSR, RPR, CLR
Certified Shorthand Reporter
299 East Broward Boulevard
Room 207-B
Fort Lauderdale, Florida 33301
(954) 769-5686
yvette_hernandez@flsd@uscourts.gov